M. E. TRAPP ET AL V. SHELL OIL COMPANY, INCORPORATED, ET AL.

No. A-685. Decided May 15, 1946.
Rehearing overruled November 27, 1946.
Second Motion for rehearing overruled December 31, 1946.
(198 S. W., 2d Series, 424.)

MR. CHIEF JUSTICE ALEXANDER dissenting.

*Grover Sellers*, Attorney General, *Geo. W. Barcus, Fagan Dickson, Elton M. Hyder, Jr., James Noel, James D. Smullen* and *Raymond A. Lynch*, Assistants Attorney General, for Railroad Commission, *Pollard, Lawrence & Blackburn* and *W. Dewey Lawrence*, all of Tyler, for Trapp, petitioners.

· It being shown that Trapp had a "good faith" title to 1.94 acres and 2.25 acres of land, which is a proper test of acreage in a suit to determine the right to drill an additional well under Space Rule 37, and there being a title dispute as to this acreage, it was error for the Court of Civil Appeals to hold that it was not error for the title court to hold that Trapp's title existed to only 1.366 acres. Cantley v. Gulf Prod. Co., 135 Texas 339, 143 S. W. (2d) 448; Sun Oil Co. v. Burns, 125 Texas 549, 84 S. W. (2d) 442; Permian Oil Co. v. Smith, 129 Texas 413, 107 S. W. (2d) 564.

*R. H. Whilden*, of Houston, *Dan Moody* and *J. B. Robertson*, both of Austin, for Shell Oil Co. and *John E. Green, Jr.*, and *Joe S. Brown*, both of Houston, *Hornsby, Kirk & Aycock* and *Stanley Hornsby*, all of Austin, for Gulf Oil Corp., respondents.

The validity and effectiveness of Rule 37, can be preserved only by holding either that the Courts of Travis County on appeal have the power and duty to adjudicate the location of the boundaries of the applicant's (Trapp) tract and thus determine the extent of his property rights; or that he must establish title to the additional land he claims before his application based thereon can be considered by the Commission. Stanolind v. Railroad Commission, 96 S. W. (2d) 664; Byrd v. Shell Oil Co., 178

S. W. (2d) 573; Magnolia Petroleum Co. v. New Process Pro. Co., 129 Texas 617, 104 S. W. (2d) 1106.

MR. JUSTICE SLATTON delivered the opinion of the Court.

This is an appeal from a judgment of the district court of Travis County which set aside a permit to drill an oil well "on the Anderson Crisp 1.77 acre tract in the McAnally and Alexander Surveys, East Texas Oil Field, Gregg County, Texas." The Railroad Commission granted the application for a second well as an exception to Rule 37 in order to prevent waste and confiscation. The Shell Oil Company and Gulf Oil Corporation filed this suit as an appeal for the purpose of canceling the permit. The trial court on the first trial sustained the permit. The Austin Court of Civil Appeals reversed and remanded the cause with instructions to try it in accordance with Railroad Commission v. Shell Oil Company, 139 Texas 66, 161 S. W. (2d) 1022, and other cases cited. 169 S. W. (2d) 1010. This court refused the application for writs of error filed by the Railroad Commission and permittee with the notation "refused for want of merit" (140 Texas 639). The trial court on second trial canceled the permit. The Austin Court of Civil Appeals affirmed the judgment of the trial court (189 S. W. (2d) 26) primarily upon the authority of Miller v. Railroad Commission, 185 S. W. (2d) 223, writ of error refused (143 Texas 668). This court granted writs of error filed by the Railroad Commission and the permittee.

It is believed, after a careful study of the record in the present case, that the lower courts have proceeded with this case upon the theory of the law as announced by the Supreme Court in each trial and upon each appeal therefrom. The trial court in the first trial evidently tried the case in accordance with the rules announced in the case of Gulf Land Company v. Atlantic Refining Co., 134 Texas 59, 131 S. W. (2d) 73, which was decided in 1939. The Austin Court of Civil Appeals undoubtedly reversed the trial court upon this court's opinion in the case of Railroad Commission et al v. Shell Oil Corp. et al, 139 Texas 66, 161 S. W. (2d) 1022, generally known as the Trem Carr case, which was decided on March 11, 1942. After the applications for writs of error were refused by this court, the case of Marrs v. Railroad Commission, 142 Texas 293, 177 S. W. (2d) 941, was handed down, which was January 5, 1944. In the Marrs case this court said:

"In making this ruling we in nowise question or overrule anything said by this Court in either Railroad Commission of Texas

v. Shell Oil Co., 139 Texas 66, 161 S. W. (2d) 1022; Gulf Land Co. v. Atlantic Refining Co., (134 Texas 59, 131 S. W. (2d) 73) ; or Railroad Commission of Texas v. Gulf Production So., (134 Texas 122, 132 S. W. (2d) 254)."

Distinguished counsel in the presentation of this case, both in oral argument and in the briefs, take conflicting views of the law with regard to the correct rule to be applied in a case like the present. We are therefore compelled to consider the prior opinions of this court to ascertain if there be a conflict in them, and if so, to define the correct rule which should govern in such cases. We recognize that it is at best difficult to avoid some uncertainties in the law because of the varying facts attending the different cases. However, it should not be too difficult to apply the same rule with respect to judicial review in each case within the class of cases generally designated as Rule 37 cases. The Supreme Court has heretofore decided the question before us, and but for the conflict our duty would be to follow the prior pronouncements of this court. In such a situation, it is not permissible for the present justices to decide the cases in accordance with their personal views of what the law should be. Our duty is to follow pronouncements of our predecessors. As we have stated, counsel in this case, as well as others in this class of cases, claim the prior opinion of this court to be in conflict. If this be true, it is our duty to settle the conflicts in order that the confusion will as nearly as possible be set at rest and so the lower courts as well as the lawyers may know how to proceed in the trial of this class of cases and to advise their clients with respect to their rights.

In deciding whether there is conflict with prior opinions of the Supreme Court, we shall not indulge in any refinement of language employed by the court, but we shall quote from each of the opinions.

The case of Gulf Land Company et al v. Atlantic Refining Company, 134 Texas 59, 131 S. W. (2d) 73, was a suit by Atlantic to set aside a permit which the Railroad Commission had granted the Gulf Land Company to drill a well on a 2.35 acre tract of land in the East Texas Oil Field. The present case is concededly such a suit. Moreover, the Trem Carr case was the same kind of suit. This court said in the Gulf Land case as follows:

"Under our oil and gas conservation statutes 'Any interested person affected * * * by any rule, regulation or order made or

promulgated by the Commission thereunder, * * * shall have the right to file a suit in a Court of competent jurisdiction in Travis County, Texas, and not elsewhere, * * * to test the validity of said laws, rules, regulations or orders. * * * In all such trials, the burden of proof shall be upon the party complaining of such laws; rule, regulation or order; and such laws, rule regulation or order so complained of shall be deemed prima facie valid.' Section 8 of Article 6049c, Vernon's Tex. Civ. St. 1936. Under the above statute the suit there provided for must be filed in a district court located in Travis County. It is too plain to admit of debate that, under our oil and gas conservation statutes, the Commission, being the statutory enforcement agency, must, as a general rule, also be the primary, or original statutory fact finding agency. The Commission is given the power and is charged with the duty to make original rules and orders, proper and necessary to carry out and effectuate the aims and purposes of such statutes. Under such a law, the Commission must of necessity ascertain facts and make fact findings. Of course, such fact findings may be made either expressly or by implication. In ascertaining and making fact findings the Commission exercises quasi judicial powers. It should therefore always approach each case with a judicial bearing, with but one purpose and aim in view, and that to make a fair finding.

"As already noted, our oil and gas conservation statutes provide an appeal from the Railroad Commission to the District Court of Travis County, Texas. The action before us here is such an appeal. In ordinary civil actions the district court, or any other trial court, exercises original jurisdiction to find and determine all fact questions, as well as all law questions. The action provided by statute for an appeal to a district court of Travis County to review the rules and orders of the Commission is clearly not an ordinary civil action. To the contrary, it is a special statutory action to enforce a right which exists only by statute, and not under the Constitution or at common law. Alpha Petroleum Co. v. Terrell, 122 Texas 257, 59 S. W. (2d) 364; Id., 122 Texas 257, 59 S. W. (2d) 372. It is the undoubted intention of the statutes under discussion to clothe the district court with all of its constitutional and statutory jurisdiction in passing on all questions of law which arise in the appeal from the Commission of such court. We encounter no difficulty in reaching this conclusion. The duty of defining the jurisdiction of the court to hear and determine fact questions under our oil and gas conservation statutes has given us very grave concern.

"Administrative boards or commissions have been set up in this State to perform many functions and purposes. We will not

here attempt to classify these functions or purposes. The Railroad Commission is constituted the statutory agency to execute and enforce our oil and gas conservation statutes. In enacting such statutes, the State is seeking to regulate a business affected with a public interest. Oil and gas are very vital parts of our national resources, and the public generally is very vitally concerned therein. It follows that the business of producing, storing, and transporting oil and gas is a business affected with a public interest and subject to regulation by the State. Brown v. Humble Oil & Refining Co., 126 Texas 296, 83 S. W. (2d) 935, 99 A. L. R. 1107; Article 6014, R. C. S. 1925 as amended. It is settled that under our oil and gas conservation statutes Rule 37 is a valid rule. Also, we think the Rule of May 29th is a perfectly valid rule.

"As already indicated, we hold that the appeal provided by Section 8 of Article 6049c, supra, contemplates that the district court shall exercise its general jurisdiction in determining or deciding all questions of law arising under such action. We think, however, that, generally speaking, the law contemplates that the Commission shall be left free to finally determine controverted issues of fact. Rule 37 permits wells to be drilled at lesser distances than the minimum spacing distances named therein to prevent waste and to prevent the confiscation of property. These well permits are generally referred to as exceptions. The rule and the law contemplate that the Commission shall determine any controverted fact question necessary or proper to be determined in passing upon applications for such exceptions. To our minds, the law contemplates that the fact findings made by the Commission in passing upon such applications are subject to review and correction by the courts only to the limited extent hereinafter stated. The court, on appeal from the Commission's order, should not set aside an order of the Commission either granting or refusing to grant a well permit unless such order is illegal, unreasonable, or arbitrary. In so far as the fact findings upon which the order is based are concerned, the order is not illegal, unreasonable, or arbitrary if it is reasonably supported by substantial evidence. Stated in another way, the court does not act as an administrative body to determine whether or not it would have reached the same fact conclusion that the Commission reached, but will consider only whether the action of the Commission in its determination of the facts is reasonably supported by substantial evidence. 34 Tex. Jur., p. 712, sec. 11, and authorities there cited. To permit the court to substitute its fact findings on controverted issues of fact in such instances would add nothing of value to the administration of

the law or the rule under discussion, but, to the contrary, would destroy all uniformity of Commission administration thereunder. We here pause to remark that conditions as they existed at the time the Commission acted are the determining factors."

We now quote from Railroad Commission v. Shell Oil Co., 139 Texas 66, 76, 161 S. W. (2d) local citation 1022, 1028 (Trem Carr case) :

"The Attorney General raises another question which we deem necessary to discuss at this time. He contends that in contesting an action of an administrative agency, such as the Railroad Commission, the testimony should be taken by the administrative agency and the findings of fact made by it, and that the courts should accept such findings without any independent hearing of the evidence anew, and that such findings so made by the administrative agency should be binding upon the court if there is any substantial evidence in the record to support same. We had thought that this question had heretofore been definitely settled by the decision of this Court contrary to the contention of the Attorney General. Magnolia Petroleum Co. v. New Process Production Co., 129 Texas 617, 104 S. W. (2d) 1106, par. 9; Railroad Commission of Texas v. Magnolia Petroleum Co., 130 Texas 484, 109 S. W. (2d) 967, par. 3. Nothing that was said in Gulf Land Co. v. Atlantic Refining Co., 134 Texas 59, 131 S. W. (2d) 73, was intended to overrule the holding theretofore made on this question. However, in view of the insistence of the Attorney General, we have concluded to further discuss the question.

"The doctrine that the administrative agency should take the testimony and make the findings of fact, and that the findings should be binding upon the court, is foreign to the law of this State. We have found no Texas decision involving review of the orders of an administrative body which so restricts the court in its taking of testimony. Such doctrine seems to have had its origin in the statutory enactments by the Congress of the United States. These statutes usually provide; 'The findings of the Board (or Commission) as to the facts, if supported by evidence, shall be conclusive.' Mr. Stason in his article in 89 Pennsylvania Law Review, p. 1026, lists nineteen such statutes so enacted by the Congress of the United States. In some of these Congress has gone so far as to provide that the review of the ruling of the Board shall not be by a trial court, but shall be by the Circuit Court of Appeals. In this connection, see the National Labor Relations Act, 29 U. S. C. A., Sec. 160 (f).

"Our State Constitution contains the following pertinent provision: 'Article II, Section 1. The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.' Vernon's Ann. St. Const., art. 2, sec. 1. The taking of the testimony, including the determination of what evidence shall be admitted and what shall be rejected, and the weight to be given thereto, is an important feature of a trial. It often requires a knowledge of the substantive law as well as the application of the rules of evidence. A lay agency, unfamiliar with these principles, might reject material evidence and admit and rely on other evidence that was inadmissible. No system has been provided in this State for reviewing the action of the administrative agency for procedural errors committed in the taking of the testimony, nor for remanding the cause to the agency for a rehearing because thereof. It would indeed be a sorry trial if an agency could thus reject the material evidence of one side and admit and consider the evidence offered by the other, and bind the court as to the facts by the findings made at such a hearing. In this connection, Chief Justice Hughes in an address before the Federal Bar Association, in 1931, said: 'The power of administrative bodies to make findings of fact which may be treated as conclusive, if there is evidence both ways, is a power of enormous consequence. An unscrupulous administrator might be tempted to say, "Let me find the facts for the people of my country, and I care little who lays down the general principles." '

"In the light of the foregoing constitutional provision, it may well be doubted whether the Legislature of this State would have theauthority to transfer from the judicial branch of the government to the administrative branch thereof such an essential part of the trial of a lawsuit as the taking of the testimony and the determination of the facts. But we need not here theorize on that question. It is sufficient to say that the Legislature of this State has not undertaken to do so in this instance. The Act here in question provides for a testing of such orders in the district court in the following language: 'Sec. 8. Any interested person affected by the conservation laws of this State relating to crude petroleum oil or natural gas, and the waste thereof, including this Act, or by any rule, regulation or order made or promulgated by the Commission thereunder, and who may be dissatis-

fied therewith, shall have the right to file a suit in a Court of competent jurisdiction in Travis County, Texas, and not elsewhere, against the Commission, or the members thereof as defendants, to test the validity of said laws, rules, regulations or orders. Such suit shall be advanced for trial and be determined as expeditiously as possible and no postponement thereof or continuance shall be granted except for reasons deemed imperative by the Court. In all such trials, the burden of proof shall be upon the party complaining of such laws, rule, regulation or order; and such laws, rule, regulation or order so complained of shall be deemed prima facie valid. (As amended Acts 1932, 42nd Leg. 4th C. S., p. 3, Ch. 2, sec. 8; Acts 1935, 44th Leg., p. 180, ch. 76, sec. 14.)' Vernon's Ann. Civ. St. Art. 6049c, sec. 8. It will be noted that the above statute refers to the action as a 'suit.' It further provides that, 'In all such trials, the burden of proof shall be upon the party complaining of such laws, rule, regulation or order.' A trial generally includes a judicial examination of the issues between the parties, whether of law or of fact. 42 Words and Phrases, Perm. Ed., p. 481. Moreover, there would have been no necessity for the placing of the burden of proof if proof was not to be heard. The Act in question clearly contemplated that the evidence shall be taken anew in the district court."

We quote the following from the Marrs case, 142 Texas 293; 300-302, 177 S. W. (2d) 941, local citation 946-947:

"In fact, as we construe the opinion of the Court of Civil Appeals, that court does not consider the evidence insufficient to support the judgment of the trial court, if the trial court had a right to make an independent review of the evidence. But apparently the Court of Civil Appeals was of the opinion that the trial court had no such authority. In this connection the court said: 'The trial court's findings of fact and conclusions of law plainly show that it simply weighed the evidence from the viewpoint of a court or jury in its fact finding function in an ordinary civil suit without reference to the findings of the Commission, accepting or disregarding evidence as it might believe or disbelieve the testimony of the several witnesses and the respective theories they advanced, on either the issue of drainage or waste of reservoir energy in producing oil, and in this manner reached the conclusion that the evidence so accepted constituted satisfactory and convincing evidence. This sort of trial of the suit testing the validity of the proration orders is contrary to the rule announced by the Supreme Court in the cases of Railroad Commission of Texas and Trem Carr v. Shell Oil Company,

Inc., et al, 139 Texas 66, 161 S. W. (2d) 1022; and Cook Drilling Company et al v. Gulf Oil Corporation 139 Texas 80, 161 S. W. (2d) 1035, * * * wherein the court holds that in a suit attacking the validity of any order of the Commission administering the oil conservation laws, or rules and regulations pertaining thereto, the inquiry is confined to the question of whether or not the order, rule or regulation is sustained by substantial evidence in existence at the time the order, rule or regulation was made, determinable from evidence adduced in the trial court only, the court being required to determine this question of law from a consideration of all the probative evidence adduced and not from a consideration of the evidence as determinative of an original issue of fact, independent of the Commission findings.' 161 S. W. (2d) 1037, 1042.

"From the above statement we conclude that the Court of Civil Appeals was of the opinion that the trial court had no right to pass on the credibility of the witnesses or the weight to be given to the testimony or to otherwise exercise the usual fact-finding function of a trial court, but was bound to accept unqualifiedly as true all testimony given upon the trial; and if, when so accepted, there was substantial evidence in the record to support the implied finding of the Commission in favor of its orders, the court was bound to accept such finding. In this we believe the Court of Civil Appeals was in error. The court cited Cook Drilling Company v. Gulf Oil Corporation, 139 Texas 80, 161 S. W. (2d) 1035, and Railroad Commission of Texas and Trem Carr v. Shell Oil Company, Inc., et al, 139 Texas 66, 161 S. W. (2d) 1022, 1028, in support of its holding. The question here under consideration does not appear to have been discussed in the Cook Drilling Company case. In the Trem Carr case we expressly repudiated the doctrine which prevails in some jurisdictions to the effect that an administrative agency can take the testimony and make the findings of fact, and that such findings will be binding on the court. We there pointed out that such doctrine had for its foundation statutory enactments which attempted to confer such authority upon the administrative agency, but that our Legislature had never undertaken to pass such a statute. We also called attention to the fact that our statute provided for a 'suit' to test the validity of orders of the Railroad Commission and for a 'trial' thereof, and that 'the taking of the testimony, including the determination of what evidence shall be admitted and what shall be rejected, and the weight to be given thereto, is an important feature of a trial.'

"It will be noted that the statute here under consideration,

Art. 6049c, Section 8, Vernon's Annotated Civil Statutes, authorizes the filing of a 'suit' to test the validity of proration orders issued by the Railroad Commission, and further provides: 'In all such trials, the burden of proof shall be upon the party complaining of such laws, rule, regulation or order; and such laws, rule, regulation or order so complained of shall be deemed prima facie valid.' It is clear from the above that it was intended there should be a 'trial' of the issues in court, and no limitation is placed on the sort of trial to be had, except that it must be one to test the validity of the order, and the burden of proof is on the one complaining thereof. A 'trial' as commonly understood contemplated a judicial examination of all the issues of law and fact. 64 C. J. 31. There cannot be a judicial examination of what the facts are without the right to pass on the credibility of the witnesses and the weight to be given to the evidence. That was the only kind of trial known to the courts at the time the statute was enacted. It would indeed be a very limited trial if the court was not only bound to accept as literally true each term of testimony that was introduced, but was denied the right to determine what weight should be given to the various circumstances in evidence. The very fact that the statute provides that the burden of proof shall be on the party complaining of the order evidences legislative intent that the court should determine whether the burden of proof had been met, and this cannot be done without weighing the evidence and passing on the credibility of the witnesses.

"In the case of Railroad Commission v. Houston & T. C. R. R. Co., 90 Texas 340, 38 S. W. 750, 756, the court had under consideration statutes which provided as follows:

" 'Article 4565. If any railroad company or other party at interest be dissatisfied with the decision of any rate, classification, rule, charge, order, act or regulation adopted by the commission, such dissatisfied company or party may file a petition setting forth the particular cause or causes of objection to such decision, act, rate, rule, charge, classification or order, or to either or all of them, in a court of competent jurisdiction in Travis County, Texas, against said commission as defendant.'

" 'Article 4566. In all trials under the foregoing article the burden of proof shall rest upon the plaintiff, who must show by clear and satisfactory evidence that the rates, regulation, order, classification, act or charges complained of are unreasonable and unjust to it or them.'

"After referring to the fact that under the statutes in ques-

tion a suit could be maintained to test the validity of the order of the Railroad Commission, either on the ground that it was confiscatory or was unreasonable or unjust, the court said: 'Indeed, the conferring of that jurisdiction upon the courts of itself imposed the duty to try the case by the ordinary rules of procedure, unless otherwise provided.'

"As previously stated, this suit was brought both as a statutory suit under Article 6049c, Section 8, Vernon's Annotated Civil Statutes, to test the validity of the Railroad Commission's proration orders and as a bill in equity to restrain the Commission from restricting production in the field in such manner as to constitute a taking of plaintiffs' property without due process of law. It was charged that the orders of the Railroad Commission were invalid because they were unreasonable, arbitrary, and discriminatory, and amounted to a confiscation of petitioners' property. The suit was for the purpose of testing out these issues. The statute authorized the suit, and upon the trial thereof the court had the right to hear evidence as to whether the order amounted to an arbitrary discrimination against the petitioners or unlawfully deprived them of their property. In passing on such issues the court had a right to pass on the credibility of the witnesses and the weight to be given to the evidence."

We deem it necessary to quote from the majority and dissenting opinions of the Austin Court of Civil Appeals in the Trem Carr case, 154 S. W. (2d) p. 507, local citation 513 and 518. The majority opinion says:

"And when such order is judicially attacked on the grounds that it is not supported by the facts on which it purports to rest, the existence, vel non, of those facts is to be judicially determined upon a trial under the rules of evidence as in other cases, except that the order carries the statutory presumption in support of its validity. If there be no evidence either way, the presumption prevails. Or, as it is sometimes stated, if the evidence pro and con on the issue involved be evenly balanced, the added presumption will control. * * *

"*But in the trial of such facts the court, or jury, must, as in other cases, pass upon the credibility of the witnesses and the weight to be given their testimony.*" (Underscoring ours).

The dissenting opinion states:

"This holding is in direct conflict with the holdings of the Supreme Court in the recent cases of Gulf Land Company v.

Atlantic Refining Company, 134 Texas 59, 131 S. W. (2d) 73, and Lone Star Gas Company v. State, 153 S. W. (2d) 681."

It is obvious from a study of the above quoted excerpts of the opinions of this court that the rules applicable to a case like the present are declared to be different in the Gulf-Atlantic case, supra, and those stated in the Trem Carr and Marrs cases, supra. It may be suggested that this court should follow the last pronouncement of this court. This cannot be done with consistency, for the reason that it was stated in the Marrs case that the Trem Carr and Gulf-Atlantic cases were in nowise questioned nor overruled. It may be suggested, as has been heretofore, that much of the opinion of the court in the Gulf-Atlantic case was dictum. The same may be said with regard to the opinion in the Trem Carr case. It certainly cannot be so claimed for the quoted excerpts from the Marrs case.

The same rule announced in the Gulf-Atlantic case had been theretofore declared by the Austin Court of Civil Appeals. Smith County Oil & Gas Co. et al v. Humble Oil & Refining Company, 112 S. W. (2d) 220, opinion by Justice Baugh, and Humble Oil & Refining Company v. Railroad Commission et al, 112 S. W. (2d) 222, opinion by Justice Blair, both decided in the month of May, 1937. It is true that this court dismissed the applications for writs of error, (130 Texas 654) but its action in so doing must be considered, inferentially at least, to approve the judgments in each of the cases. In each of those cases the court stated the rule to be:

"Under the repeated holdings of this court and of the Supreme Court, under such circumstances, the only matter with which the courts are concerned is whether or not there was substantial evidence before the Railroad Commission to sustain its order in the premises." 112 S. W. (2d) 220, 221.

It will be observed that this court cited this case with approval in the Trem Carr case. We further quote from the opinion of the Court of Civil Appeals:

"Under the above-stated rule, the only inquiry in the instant case was whether there was any substantial evidence to sustain the action of the Railroad Commission in granting the permit to drill the second well as an exception to Rule 37, in order to prevent waste and to protect vested rights or to prevent confiscation; and affirmative evidence having been introduced which substantially supports these findings, the court inquiry was at an end." 112 S. W. (2d) 222, 227.

We do not deem it necessary to review other opinions of the Court of Civil Appeals on the questions involved. It is sufficient to say that in the Gulf-Atlantic case (134 Texas 59, 131 S. W. (2d) 73) this court, after announcing in no uncertain terms that in a case like the present the review contemplated by the statute is what is denominated as the substantial evidence rule, and in that case it was said:

"In this opinion we have not attempted to discuss and review all of the opinions that have been written by the Courts of Civil Appeals in regard to the matters we have discussed and decided. In regard to such opinions, we will simply say that if there are any conflicts between such opinions and this opinion, the views expressed in this opinion shall prevail."

We conclude that the rules announced in the Gulf-Atlantic case are now the prevailing rules declared by this court, notwithstanding the conflicting statements in the Trem Carr and the Marrs cases. We shall now proceed to apply them to the case before us.

The evidence offered by the protestants of the permit as summarized in the brief is substantially as follows: The potentials of the various wells involved, the sand thicknesses and the allowables when all of them were flowing in November, 1940, which indicated the presence of water drive and good permeability between this area and the water area; that the permeability of the producing field in the area of the Trapp tract and the surrounding area was high, at least as good as the average of the field; that the sand in the area was very porous and as good as the average of the field; that all other characteristics that affect migration and production of oil were as good or better in the area as that elsewhere in the field. The permeability, porosity and all other characteristics that affect production and migration of oil were substantially similar under the Trapp tract to the average in the eight times area around it in the twenty-seven acre circle and in the forty acre circle. That it was the witness' opinion that there was as much oil under the Trapp lease on November 20, 1940, as there had been when the field was first discovered, each barrel that was withdrawn having been replaced by an equal amount of oil that came in from the west. That the eastward migration is a normal condition in the field and that there is no way it could have been produced without having such migration. The average density of drilling of the East Texas field in the segment west of the Trapp lease over to the west edge of the field in 1940 was about the same

as the average of the entire field. The same condition existed as to the east, north and south edge of the Trapp lease. That the Trapp tract has at all times produced more oil per acre than the average of the land to the west or to the east or to the north or to the south of it; that it is not possible for the Trapp tract to have suffered any net loss or drainage of oil up to November 20, 1940. The witness gave his estimate of the recoverable oil and the amount that had been withdrawn from the Trapp tract and said that in his opinion the Trapp tract with one well will continue to produce forty-four years longer, and during that time will yield a total of 220,000 barrels of oil, or 540% of the recoverable oil originally in place thereunder. It was the witness' opinion that after a study of the field that the Trapp tract had an advantage on November 20, 1940, to the surrounding leases. The witness testified that in November, 1940, the wells were permitted to produce twenty-one days and were shut down during the rest of the month; that the highest allowable permitted to any well was twenty-five barrels, and the lowest was twenty. That if the entire East Texas field at that time had been drilled to a uniform density of one well to 1 1/3 acres or one well to two acres, with minimum production of twenty barrels, it would have resulted in a decrease of about a billion barrels of oil in the ultimate production of the field, and that it was his opinion that with that many wells, if production had been held down to a rate that would not cause a diminution in the ultimate production of the field, each well would have been allowed to produce about a barrel and a half of oil per day so that they would not pay the expenses of operation. That the granting of well No. 2 on the Trapp tract would not ultimately increase the production of the East Texas field. The witness further testified that as long as proration remained as it was in November, 1940, the areas on the east side of the field that have more wells per acre are going to produce each day more of the oil that migrates from west to east than wells on land that is less densely drilled. That if the entire field had been drilled with uniform spacing of wells, each tract on the east side of the field would have produced substantially the same amount per acre of the oil that migrates to the east, and that Trapp with one well as of November, 1940, on his tract, would produce more oil per acre than a well in that area would produce per acre if the entire field had been drilled to a uniform density of one well to ten acres, or one well to five acres. The witness further testified, assuming that the Trapp tract contained 1.94 acres, that it was originally underlain with 87,700 barrels of recoverable oil, and that taking 81,000 barrels of oil

that had been recovered from the Trapp well up to November, 1940, on the basis of his estimate as to the future life of wells in this area, one well on that size tract of ground would ultimately produce 301,000 barrels of oil, or 343% of the original recoverable oil thereunder, and that was more than would be produced by one well on that tract if the entire East Texas field had been drilled to the same density, and also more than would be produced per acre by ten acres around that area with only one well on it if the entire field were drilled to a density of one well to ten acres. A like estimate was made by the witness if the tract was assumed to contain 2.25 acres, and that one well on such tract would produce more oil per acre than it would have produced per acre if the entire field had been drilled from the beginning to the same density as that to which it was drilled. One well on such 2.25 acre tract would produce more oil per acre with the field drilled as it was in November, 1940, than one well on a ten acre tract centered by that well would have produced per acre if the entire field had been drilled from the beginning to a uniform density of one well to each ten acres, and that would be true whether the tract contained 1 1/3 acres or 1.94 acres or 2.25 acres.

Permittee introduced expert evidence summarized as follows in his application for writ of error: That if the Trapp tract is considered as a 1.94 acre tract, using the center of gravity eight times area which embraces nine wells on 15.55 acres outside the Trapp tract, the density of drilling was 1.72 acres per well as compared with the Trapp tract considered density of 1.94 acres per well. Considering the Trapp tract as 1.94 acres, with the radius point the Trapp well No. 1, a ten acre circle embraces seven wells on 8.06 acres outside the Trapp tract, with a resultant density of 1:15 acres per well as compared to the permittee's tract density of 1.94 acres per well. That if the Trapp tract is considered as a 1.94 acre tract, with a radius point the Trapp well No. 1, a five acre circle embraces three wells on 3.06 acres outside the Trapp tract, with a resultant density of 1.02 acres per well. Considering the Trapp tract as a 2.25 acre tract, an eight times area circle encloses ten wells on 18 acres outside the Trapp tract, with a resultant density of 1.80 acres as compared to appellant's Trapp tract, with a density of 2.2503 acres per well. Considering the Trapp tract as 2.25 acres, a ten acre circle embraces seven wells on 7.8 acres outside the Trapp tract, with a resultant density of 1.1 acres per well as compared to permittee's tract with a density of 2.25 acres per well. Considering the Trapp tract as the same amount of acreage, a five acre circle embraces three wells on three acres outside the

Trapp tract, with a resultant density of one acre per well as compared to the Trapp tract, with a density of one well to two acres.

Another witness testifying as an expert stated that he had made a particular study of oil production and drainage in the Trapp area in connection with the application of M. E. Trapp for well No. 2. Primary importance was placed upon the relative distance of the wells each from the other, and the relative influence that those wells would have upon the drainage of oil from an individual tract caused by the nonuniformity of drilling pattern in this area and the fact that the eight times area aid is a variable one, depending upon the size of the particular tract. The witness stated that the eight times area circle depicted around the tract considered as 1.94 acres is an area which has an influence on the drainage from the tract; that the wells are unevenly spaced acts as an advantage to the area lying outside the Trapp tract. The witness testified that an eight times area circle around the Trapp tract considered as 2.25 acres would enclose an area which would have a greater advantage in density than the density depicted in the 1.94 acres. That the disadvantage of the Trapp tract would be even greater, the drainage being to the area outside of the Trapp tract. The witness stated if you constrict the area more closely to the Trapp tract, making it smaller in area than the eight times area, the drainage influence is greater. It was his opinion that since the spacing program in East Texas is one well to ten acres, which means that one well will drain ten acres, a ten acre circle around the Trapp tract considered as 1.94 acres, using the Trapp well No. 1 as the radius point, the density in the area outside the Trapp tract is one well to 1.15 acres compared to the density of the Trapp tract of one well to 1.94 acres. That since the field is drilled one well to five acres, he had made a five acre circle which showed the Trapp tract to have a density of 1.94 acres and the area outside but within the circle would have a density of 1.02 acres per well, which indicated, in his opinion, that the wells on the adjacent tracts are so located as to afford the offset wells a definite advantage in drainage of oil from the 1.94 acre tract. A similar study was made by the witness considering the tract as a 2.25 acre tract, with similar results. The witness stated that in his opinion that since the relative position of the offsetting wells has a definite influence on drainage, and that in his opinion each well will produce twenty barrels of oil per day, and considering the Trapp tract as a 1.94 acre tract, he took the relative distances of the two wells to the common line and from the offset to the common line, and took their percentage of

distances, giving each their percentage, the closest well to the line getting more of the twenty barrels and the well farther removed from the common line getting less; and after computing this the witness found that the Trapp tract is at a disadvantage by reason of drainage due to the spacing of wells in the amount of thirty-two barrels of oil per day. It was his opinion that appellant Trapp with one well, under these circumstances, is not afforded an opportunity to produce his oil as compared with those surrounding leases. A similar study was made considering the Trapp tract as containing 1.77 acres, with the resultant disadvantage of 20.58 barrels of oil per day.

The witness further stated that under the existing conditions as obtained in 1940, it was necessary for appellant Trapp to drill well No. 2 as applied for in order to eliminate the drainage disadvantage which he suffered, and as a direct and equidistant offset to the Gulf No. 2 Neely and to the northwest the Sutton and Hawkins No. 2 Jim Whitaker.

As we have stated, the trial court, on the first trial of this case, sustained the Railroad Commission's action in granting the permit. This action was evidently upon the application of the substantial evidence rule which was, in the Gulf-Atlantic case, said to be the rule applicable to this kind of a case. We have carefully considered the evidence contained in the record and we are of the opinion that there is substantial evidence to sustain the action of the Railroad Commission in granting the permit in review.

■ Paraphrasing the language employed in the Gulf-Atlantic case, we think the record as a whole is reasonably supported by substantial evidence. The permit involved, in so far as the fact findings upon which the order is based are concerned, is not illegal, unreasonable or arbitrary if it is reasonably supported by substantial evidence. The conditions as they existed at the time the Railroad Commission acted are the determining factors. It was the duty of the trial court to exercise its constitutional and statutory jurisdiction in determining all questions of law which arose on the trial of the cause after the appeal from the Railroad Commission to the trial court. The appeal provided for by statute to the district court of Travis County is clearly not an ordinary civil action. In such an appeal it is not the province of the trial court to substitute its judgment for that of the Railroad Commission on controverted issues of fact. Here lies the error of the trial court in the second trial.

While we are here concerned with only cases arising under Article 6049c, Section 8, it is not inappropriate to point out that our predecessors, in the case of Railroad Commission v. Shupee, 123 Texas 521, 73 S. W. (2d) 505, 509, gave a similar and perhaps a more compelling statute the same construction which this court gave to Section 8 of Article 6049c in the Gulf-Atlantic case. Nor are we concerned here with a different rule stated in Lone Star Gas Co. v. The State, 153 S. W. (2d) 681, where the case was turned upon the legislative mandate that such a case "shall be tried and determined as other civil cases in said court." It is sufficient to point out that no such comparable language was employed in the statute concerning the appeal of the present case.

■ This court, in the case of Thomas et al v. Stanolind Oil & Gas Co., this day decided, (this volume p. 270, 198 S. W. (2d) 420) explained the holding in the case of Miller v. Railroad Commission, 185 S. W. (2d) 223, error refused, wherein it was stated:

"* * * that the eight times area method had never been used as a conclusive criterion and that the applicant was not entitled, as a matter of right, to have his tract drilled in conformity therewith. The court [Austin Court of Civil Appeals] recognized that, because of the peculiar facts of that case, discrimination might result whichever way the Commission resolved the question, and in that situation held that 'it was for the Commission to determine which course would best conserve the natural resources of the State'."

We are of the opinion that in the present case the same rule should apply, and where the Commission, as it did in this instance, granted the permit, its action should be sustained when reasonably supported by substantial evidence.

The most controversial question in this case is the amount of acreage contained in the Trapp tract which should rightly be considered in determining his right to a permit. It seems to be conceded by all that Trapp owns a tract containing 1.366 acres of land. Trapp claimed to own land north and east of his 1.366 tract which would contain 1.77 acres, or 1.94 acres or 2.25 acres, including the 1.366 acres. The application for a second well filed by Trapp before the Commission indicated by the plat filed therewith that the tract contained 3 acres. The order of the Commission described the tract as "the Anderson Crisp 1.77 acres or 3 acres in the McAnally and Alexander Surveys East Texas Field, Gregg County, Texas."

The facts as we view them in connection with the title asserted by Trapp are that Trapp, in 1932, bought a small tract of land from persons who were asserting limitation title thereto. The tract had a house thereon and a yard fence. On the purchase of the tract the yard fence was perhaps used as the out-boundaries by the surveyor. This is the conceded acreage owned by Trapp. Trapp offered evidence tending to support a limitation title by his predecessors in title to more land than was contained in the yard and also tending to prove that he took possession at the time of his purchase for more land than was contained within the yard fence. Apparently, the acreage claimed by Trapp would have to be enlarged to the extent of 2.25 acres before his claim would conflict with adjacent land owners. This is explained by virtue of the protestants' claim that a part of the land sought to be included within the Trapp assertion of ownership consists of a traveled road. Trapp contends that there was no public road, but only a permissive use since he had acquired the tract. The matter is further complicated by the fact of the second well being located on land admittedly owned by Trapp. These facts present a number of complicated problems.

■ The duties of the Railroad Commission as given by law do not encompass the power or authority of deciding the ownership of the title to land. We think it follows that the appeal contemplated by Section 8 of Article 6049c does not include such power, even though the appeal is to a district court of Travis County which, in a proper case, has such jurisdiction. It is also necessary to consider that this land is situated in Gregg County, and the claimants of title thereto have the right to litigate the title in the county where the land is situated under our venue statutes. Moreover, the district court of Gregg County has not jurisdiction to hear and determine the appeal provided under Article 6049c.

■ This question immediately presents itself for decision: Is one desiring a permit to drill a well for oil and gas on land claimed by him compelled to present to the Railroad Commission a perfect paper title to the land involved? Or, perhaps more accurately stated, was it incumbent upon Trapp to show a perfect paper title to land which is to be considered in passing on his right to a second well on land, the title to which is not in dispute? Since we know as a matter of common knowledge that many titles in this state rest upon a limitation title, we have no hesitancy in answering the above question in the negative. We recognize also the unjustness to adjacent land owners or lease-holders if the land considered is not owned by Trapp. However,

no doubt, whatever damages may be suffered by them can be settled in the title suit.

We think the applicable rule was stated by this court in the case of Magnolia Petroleum Co. v. Railroad Commission et al, 170 S. W. (2d) 189:

"If the applicant makes a reasonably satisfactory showing of a good-faith claim of ownership in the property, the mere fact that another in good faith disputes his title is not alone sufficient to defeat his right to the permit; neither is it ground for suspending the permit or abating the statutory appeal pending settlement of the title controversy."

Applying those principles to the present case, and after a careful consideration of all the evidence with reference to the title offered by the parties to this appeal, we are of the opinion that Trapp made a reasonably satisfactory showing of a good faith claim of ownership to at least 1.77 acres and 1.94 acres.

It follows from what we have said that the lower courts erred in canceling the permit. The judgments of the lower courts are reversed and judgment is here rendered upholding the permit.

Opinion delivered May 15, 1946.

### ON MOTION FOR REHEARING.

MR. JUSTICE SLATTON delivered the opinion of the Court.

One of the complaints urged against the majority opinion is that our holding violates Section 1 of Article XI of the Texas Constitution, which requires a separation of powers between the three departments of government. In the case of Trimmier v. Carlton, 116 Texas 572, 296 S. W. 1070, similar attacks were made on the statutes there involved. The court held that the constitutional provision invoked did not prohibit the delegation to an administrative body of the power to find facts where the legislature cannot itself practically and efficiently exercise such power. The reason for the holding was grounded upon the law of necessity in that the Constitution itself does not require the impractical or the impossible.

The legislature has delegated to the Railroad Commission

the power not only to enforce its statutory mandates for the conservation of oil and gas, but also the power to make rules and orders necessary to carry into effective operation the legislative powers.

■ Rule 37 was promulgated to effectuate the purpose of conservation of oil and gas. It is within the power of the legislature to delegate to the Railroad Commission the duty of determining facts necessary to show the necessity of promulgating the rule and to find and determine facts necessary to grant exceptions thereto. The power to find facts is essential in promulgating Rule 37, both as to the proper spacing of wells generally and the drilling of specific wells as exceptions to the general rule.

When a rule or order has been promulgated in virtue of a statute the vital issue is whether under the rule or order the legal rights of the parties in interest are protected. The term "legal rights" embraces both public and private rights. Article 6036a provides for hearing after notice before a rule or order may be adopted by the Railroad Commission (except in limited emergencies).

Article 6049c, Section 7, further provides for hearing so as to protect the rights of the parties and the public as well.

Rule 37 by its own terms provides "for an exception to be granted only after hearing to be had on an application duly verified and filed, and then after ten days' notice has been given to adjacent lessees and after public hearing at which all parties at interest may appear and be heard, and upon a finding that an exception to such rule is necessary either to prevent waste or to protect property belonging to the applicant from confiscation."

■ Section 8 of Article 6049c provides that a suit to test the validity of an order of the Railroad Commission must be brought "against the Railroad Commission, or the members thereof." No other defendant is required by the statute. The statutes thereby evidence the vital interest of the state in the rules and orders of the Railroad Commission which are passed in connection with the conservation of oil and gas.

It has been authoritatively decided that the Railroad Commission is the only necessary party in a proceeding brought in virtue of Section 8 of Article 6049c, which has for its purpose the setting aside of an order of the Railroad Commission to

grant an exception to Rule 37. Magnolia Petroleum Company v. Edgar, 62 S. W. (2d) 359, writ refused.

It has been decided in the case of L. P. & B. Oil Corporation v. Gulf Oil Corporation, 115 S. W. (2d) 1034, writ refused, that a temporary injunction issued against a permittee to prevent the drilling of an oil well under a Rule 37 permit was void because notice had not been given to the Railroad Commission. These decisions show beyond doubt that such a proceeding is not an ordinary civil suit as was decided by this court in the Alpha Oil case, which was cited and approved in the Gulf-Atlantic case, mentioned in the majority opinion. The rule announced in the case of Spear v. Humble Oil & Refining Company, 139 S. W. (2d) 212, further demonstrates the fact that such a suit is not an ordinary civil suit in that it was there held to be unnecessary for an adjacent lessee to show injury to its private property before it could maintain such a' suit. In the Alpha Oil case, supra, it was definitely and clearly held that such a suit was not an ordinary civil suit, and the rule was reiterated with equal clearness in the Gulf-Atlantic case, supra. This Court had in effect decided the question prior to those cases in the case of Railroad Commission v. Magnolia Petroleum Company, 130 Texas 484, 109 S. W. (2d) 967 (which case is generally known as the Century case). The legislative acts delegating to the Railroad Commission the duty of conserving oil and gas evidence a clear public policy to require the Railroad Commission to decide the matters committed to it and provide ample protection under the proceedings provided by the statute for those parties in interest who desire to contest the validity of the rule or order of the regulatory body, thus recognizing the vital interest which the public has in every rule or order passed by the Commission. If these considerations are kept in mind, it will not be difficult to see that in the performance of the legislative mandate the Railroad Commission in promulgating its rules and orders has provided sufficient safeguards, viz., notice and a public hearing, to protect the private rights as well as the rights of the public. Moreover, under Section 8 of Article 6049c providing for an appeal to the district court of Travis County, it cannot be successfully contended that familiar constitutional safeguards have been violated.

A rule or order of the Railroad Commission made in virtue of a statute which duly authorized it should be considered under the same principles as if it were the act of the legislature, for in such case the Railroad Commission is an agency of the legislature. The difference is that it must first be decided whether

the power to make the rule was properly delegated by the legislature. In 11 American Jurisprudence, p. 794, Sec., 131, it is stated:

"The same rule that applies to statutes passed by the legislature is equally applicable to regulations set forth by an administrative body. It is settled that to all administrative regulations purporting to be made under authority legally delegated there attaches a presumption of the existence of facts justifying the specific exercise. The presumption of the existence of facts sufficient to justify an exertion of the police power is strengthened where a regulation is adopted after notice and public hearing."

Rule 37 was adopted after notice and hearing by the Railroad Commission and all exceptions are granted after verified application and notice and a hearing is had thereon. The rule stated in the text was in effect applied to a case like the present in the Magnolia Petroleum case, supra, known as the Century case, 130 Texas 484, 109 S. W. (2d) 967, 971, wherein the court said, in speaking of Rule 37:

"By its language the rule is cast into two distinct parts. The first deals with a spacing pattern for the entire field and for wells generally; the second, with specific wells, to be drilled as exceptions to the general rule. These two parts compose the entire rule, the one as much as the other, and must be construed together. We interpret their legal effect to be this: An applicant for a permit to drill a well, not included within the general terms of the first part of the rule, has the burden of showing a legal right thereto; having secured from the Railroad Commission an order granting a permit to drill, such order, when issued, is presumptively valid. It is made so by statute, and, *being an official act, would be presumptively valid without a statute.*" (Italics ours).

■ This Court, in testing the constitutionality of a statute, has variably stated the rule as follows:

Ashford v. Goodwin, 103 Texas 491, 131 S. W. 535: "This court must sustain it unless its invalidity be apparent beyond a reasonable doubt."

State v. Hogg, 123 Texas 568, 70 S. W. (2d) 699; on rehearing 123 Texas 578, 72 S. W. (2d) 593: "* * * the rule is that every possible presumption is in favor of the constitutionality of a statute, and such presumption obtains until the contrary in shown beyond a reasonable doubt."

It is stated in the case of Brown v. City of Galveston, 97 Texas, 1, 75 S. W. 488, local citation 492:

"If there be doubt as to the validity of the law, it is due to the coordinate branch of the government that its action should be upheld and its decision accepted by the judicial department."

When these familiar principles of law, so many times declared, are applied to rules and orders within the scope of authority delegated to the Railroad Commission it is readily apparent that there is no departure from the usual concepts of law, but is only indulging the presumption of validity to official acts of those legally charged with the enforcement of conservation of oil and gas in this state.

■ The duties of the Railroad Commission in passing on an application for a permit to drill a well as an exception provided in Rule 37 are much like the duties enjoined by law upon a board of equalization. Such duties are quasi judicial, but like those considered in the Carlton case, supra, not subject to constitutional inhibitions. The rule with respect to an order of a board of equalization is that the same is valid unless it is shown that either the board was without jurisdiction or the board acted unlawfully to the prejudice of the complainant. City of El Paso v. Howze, 248 S. W. 99, writ refused; Zachary v. City of Uvalde (Com. App.) 42 S. W. (2d) 417; Victory et al v. State, 138 Texas 285, 158 S. W. (2d) 760.

The same rule is applicable to the acts of a commissioners court, even though supervisory appeal has been extended to the district court in such cases by the Constitution. In the case of Williams v. Castleman, 112 Texas 193, 247 S. W. 263, speaking wiith reference to an order issued by the commissioners court, this Court said:

"The judgment and discretion of the commissioners' court in the instant case having been exercised in good faith and without fraud, not arbitrarily, nor in gross abuse of discretion, there is nothing in the record which would warrant an annulment of the order, either upon collateral or direct attack."

The court further says:

"No principle of law is better settled than that acts of discretion and findings of fact on the part of public officers to which such power is confided, including commissioners' courts, will not be reviewed on appeal. 22 Ruling Case Law, pp. 490,

491; Word v. Schow, 29 Texas Civ. App. 120, 68 S. W. 192; State v. Goodwin, 69 Texas 57, 5 S. W. 678; Ewing v. State, 81 Texas 172, 16 S. W. 872; Foster v. Hare, 26 Texas Civ. App. 177, 62 S. W. 541; State v. Larkin, 41 Texas Civ. App. 253, 90 S. W. 912, 916; Scarbrough v. Eubank, 93 Texas 106, 53 S. W. 573."

Thus it will be seen that the application of the substantial evidence rule as it has been applied in the cases cited is not a departure from the rule which has been applied in many cases during the entire history of this state.

■ There seems to be confusion in the briefs as to the meaning and effect of the substantial evidence rule. As it has been applied in the case before us, the parties exercised the right of cross examination of witnesses. There was no restraint on any proferred impeaching testimony. There is no information of any perjured testimony in the record before us. The trial court was not required to close its eyes to fraud or sham. The substantial evidence rule does not mean that the parties are limited to the evidence taken by and before the Railroad Commission. The parties may, as the parties have here, introduce any relevant legal testimony in the district court of Travis County. The trial court does not have to consider incredible, perjured or unreasonable testimony because such evidence is not substantial. We shall not undertake to formulate a comprehensive definition of the rule, but it is believed that this Court made a fair statement of the rule in the Trem Carr case, (ante p. 330-333) to which we have referred in our original opinion. Railroad Commission v. Shell Oil Company, 139 Texas 66, 161 S. W. (2d) 1022. Speaking of the substantial evidence rule it is said:

"In such a case the issue is not whether or not the agency came to the proper fact conclusion on the basis of conflicting evidence, but whether or not it acted arbitrarily and without regard to the facts. Hence it is generally recognized that where the order of the agency under attack involves the exercise of the sound judgment and discretion of the agency in a matter committed to it by the legislature, the court will sustain the order if the action of the agency in reaching such conclusion is reasonably supported by substantial evidence. *This does not mean that a mere scintilla of evidence will suffice, nor does it mean that the court is bound to select the testimony on one side with absolute blindness to that introduced by the other.* After all, the court is to render justice in the case. The record is to be considered as a whole, and it is for the court to deter-

mine what constitutes substantial evidence. *The court is not to substitute its discretion for that committed to the agency by the legislature, but is to sustain the agency if it is reasonably supported by substantial evidence before the court. If the evidence as a whole is such that reasonable minds could not have reached the conclusion that the agency must have reached in order to justify its action, then the order must be set aside."* (Italics ours.)

The authority to regulate the natural resources of oil and gas is in virtue of Section 59a of Article XVI of the Constitution. The problem of conservation of these resources has been recognized by this Court to be "complex," "intricate," and "exacting." Corzelius v. Harrell, 143 Texas 609, 186 S. W. (2d) 961, and authorities there cited. It is not the function of this Court to pass upon the wisdom of delegating authority to administrative agencies. That a legislative function. It has been previously stated by this Court that "the Railroad Commission must be fair and render justice to the parties." When the Commission fails in its duty, we should have no hesitancy in declaring its order or rule invalid but, under the decisions of this Court and on the evidence which we summarized according to the views of the respective parties in this case, it clearly appears that the action of the Railroad Commission in granting the permit in review is reasonably supported by substantial evidence. In such case the trial court should not substitute its judgment for that of the Commission.

It is contended by respondents that since this case was tried under the law as pronounced in the Trem Carr case, supra, we should not reverse and render, but should reverse and remand, in order that the protestants might have another trial under the law as we have declared it to be on this appeal. We pointed out in the original majority opinion that when this case was first tried under the Gulf-Atlantic case, the trial court decided it in favor and upheld the permit which was granted to him, but when the case was reversed by the intermediate court, the trial court, in the second trial, decided in favor of the protestants and invalidated the permit. Since the issue to be determined by the trial court is a question of law, and the case appears to have been well developed by both the permittee and the protestants, we can see no benefit to be gained by either of the parties to this suit in remanding the case for another trial.

Respondent further contends that the rule announced in the

Trem Carr case governing the trial of Rule 37 cases should now be followed by the Supreme Court of Texas. The contention is based on the following facts: that the Trem Carr case was handed down in 1943, and at subsequent sessions of the legislature bills were introduced which had for their purpose the effect of changing the rules governing the nature of the trial of Rule 37 cases which had been declared in the Trem Carr case; that since the legislature refused to pass those proposals, such action amounts to legislative approval of said opinion.

It is also claimed that the Marrs case was approved by the legislature in substantially the same manner. An historical review of the decisions of this Court on the specific questions now before this Court reveals that the Century case was decided on November 3, 1937, Gulf-Atlantic was handed down on July 26, 1939. It was observed in the original opinion in this case that the Court in the Trem Carr case quoted from the Gulf-Atlantic opinion with approval. It was also pointed out in our original opinion in this case that this Court in the Marrs case stated that it was not intended in the Marrs case to either question or overrule either of the cases of Gulf-Atlantic and Trem Carr.

It may be appropriate to here observe that this Court handed down the opinion in the case of Railroad Commission v. Mackhank Petroleum Co., 144 Texas 393, 190 S. W. (2d) 802, on November 14, 1945, without a dissent subsequent to all of the hereinbefore mentioned cases.

Thus it is readily seen that the failure of the legislature to pass the two proposals cannot be given the force claimed for it by the respondents. If nonaction of the legislature be given weight, the balance of the scales is toward the other cases rather than the Trem Carr and Marrs cases.

Since the Century and Gulf-Atlantic cases were decided so many years ago and many property rights have no doubt been acquired under them, we should not at this late day change them, even though doubt as to their correctness may exist in the minds of some lawyers and judges.

We have carefully considered all motions for rehearing which have been filed by the respondents, as well as all of the briefs which have been filed by counsel appearing as amici curiae.

The motions for rehearing will be in all things overruled.

Opinion on motion for rehearing delivered November 27, 1946.

Second motion for rehearing overruled December 31, 1946.

MR. CHIEF JUSTICE ALEXANDER dissenting.

I cannot agree with the views expressed in the majority opinion.

This is a Rule 37 case. The Railroad Commission adopted Rule 37, applicable to the East Texas Oil Field, which had the effect of limiting one well to each ten acres, but permitted the drilling of additional wells where necessary to prevent confiscation or waste. Trapp was granted permission to drill a second well on the "Anderson Crisp 1.77-acre or 3-acre tract in the McAnally and Alexander Surveys, East Texas Oil Field, Gregg County, Texas." The Shell Oil Company and the Gulf Oil Corporation filed suit to set aside the permit. The trial court found that the second well was not necessary in order to prevent waste or confiscation, and cancelled the permit. This judgment was affirmed by the Court of Civil Appeals. 189 S. W. (2d) 26.

There is no question of waste involved in this case. Trapp's claim of right to an additional well is based on his assertion that while he has a record title to only 1.366 acres, he in good faith claims title to enough additional land to increase his tract to 1.94 acres or possibly 2.25 acres, and in view of the size of his tract and the number of producing wells on the adjoining tracts, he is not getting his fair share of the oil. However, the trial court filed findings of fact in which it was found that Trapp owned only 1.366 acres, and that he did not have a good-faith claim of title to any additional land. The trial court further found that even though Trapp's tract had contained 2.25 acres, he was nevertheless getting more than his fair share of the oil in the field.

.It seems to be recognized by all parties that if Trapp owns only 1.366 acres of land as found by the trial court, he is receiving his fair share of the oil, and the second well is not necessary in order to prevent confiscation. It is also clear that if, under the above facts, he is allowed an additional well, he will get more than his fair share of the oil. He will be permitted to appropriate or confiscate oil which rightfully belongs to his neighbors. It will be seen then that the case involves no issue of public policy—no question of waste of our natural resources. It involves only a controversy between private parties concern-

ing the extent of their respective property rights and whether the Commission's order impairs the property right of one in favor of the property right of the other.

In order to determine whether Trapp was getting his fair share of the oil it was necessary to ascertain the size of his tract of land. The crucial point in the case therefore was whether or not he had a good-faith claim to more than 1.366 acres of land. The trial court found against him on this issue.

But the majority opinion adopts the theory that in a case like this the Railroad Commission makes the findings on all issues of fact, and its findings are binding upon the court if there is any substantial evidence in the record to sustain them. That this is the holding of the majority is made even clearer by the statement contained in the companion case of Thomas v. Stanolind Oil and Gas Company, decided on the same day, wherein it was said:

"The Legislature has clothed administrative agencies with special powers to perform special functions and in reviewing fact findings of such agencies no question of the preponderance of the evidence is involved. The question is whether or not there is any substantial evidence affording reasonable support for such findings and the orders entered thereunder." 145 Texas 270, 273, 198 S. W. (2d) 420.

Upon this theory the majority holds that even though the trial court found that Trapp did not have a good-faith claim to any additional land, yet since witnesses testified to facts which, if credible, would support the claim of additional land, the trial court was not entitled to reject this evidence, but was bound to accept the same as true and to give it credence over all other evidence to the contrary, and to assume that Trapp did in good faith claim the additional land. In other words, it holds that in passing on a Rule 37 case in determining whether the applicant's oil would be confiscated without the additional well or whether the order of the Railroad Commission granting the additional well would enable the applicant to appropriate his neighbor's oil, the trial court is not permitted to pass on the credibility of the witnesses or the weight to be given to the testimony ,nor to otherwise exercise its fact-finding function as a trial court, but is bound to accept unqualifiedly as true all testimony given upon the trial which would tend to support the order entered by the Railroad Commission, and to sustain the permit if there is any substantial evidence to support it. Upon

this theory the majority holds that neither the trial court nor the appellate court is authorized to set aside the permit granted by the Railroad Commission.

I cannot subscribe to the above doctrine.

I concede that if in fact oil is being wasted the Railroad Commission is authorized to exercise its discretion in determining *how* the waste may be stopped, and whatever order it enters for the remedy of this situation will be sustained by the courts if there is any substantial evidence to support it, provided the order entered by the Commission does not itself produce confiscation. This is so because the matter of preventing waste of oil has been committed by the Legislature to the discretion of the Railroad Commission, and the courts will not put themselves in the position of the Railroad Commission and undertake to direct *how* the Commission shall exercise the discretion confided to it. Railroad Commission v. Shell Oil Co., Inc., 139 Texas 66, 161 S. W. (2d) 1022, 1029.

, But the Railroad Commission is authorized to exercise its discretion only when this is necessary to *prevent waste*. No discretion has been conferred on the Commission to confiscate the property of one private party in favor of another private party. The Commission is not entitled to exercise its discretion in preventing waste until it is first shown that oil is being wasted. And in the exercise of its powers it must not cause the misappropriation of the oil of either of the parties. Whether or not the order of the Railroad Commission causes confiscation may be questioned in court, and when it is questioned that issue must be tried out as any other issue of fact.

The fallacy of the majority opinion lies in the failure to recognize the distinction between the right of the Railroad Commission to determine *how* its discretion shall be exercised when the facts invoke it, and the right of the courts to determine whether the order of the Railroad Commission amounts to a confiscation of the vested property rights of one of the parties.

It must be remembered that every landowner or lessee of land has a *vested property right* in the oil in and under his land and is entitled to a fair chance to recover it or its equivalent. Any denial of this right constitutes confiscation of one's property rights. Railroad Commission v. Gulf Production Co., 134 Texas 122, 125, 132 S. W. (2d) 254. The right of the surrounding land-

owners and lessees to be protected against the taking or confiscating of their property *arises by virtue of the Constitution,* and where constitutional rights are thus involved the parties are entitled to have all issues of fact relating thereto tried out by the court *upon its own independent judgment,* uninfluenced by any implied finding of the administrative agency charged with having interfered with such constitutional right. The Railroad Commission, the administrative agency charged with having caused confiscation, has no right to adjudicate the issues of fact and to bind the courts by its findings. It cannot sit in judgment and finally determine the issue of fact as to whether it has exceeded its own authority. To sanction such practice would allow it to sit in judgment in its own case and to deprive the individual of his constitutional right of trial by jury.

In the case of Crowell v. Benson, 285 U. S. 22, 60, 52 S. Ct. 285, 76 L. Ed. 598, the Supreme Court of the United States said:

*"In cases brought to enforce constitutional rights, the judicial power of the United States necessarily extends to the independent determination of all questions, both of fact and law,* necessary to the performance of that supreme function. The case of confiscation is illustrative, the ultimate conclusion almost invariably depending upon the decisions of questions of fact. *This Court has held the owner to be entitled to a 'fair' opportunity for submitting that issue to a judicial tribunal for determination upon its own independent judgment as to both law and facts."* (Italics mine.)

In the case of Ohio Valley Water Co. v. Ben Avon Borough, 253 U. S. 287, 40 S. Ct. 527, 64 L. Ed. 908, 914, the Supreme Court of the United States had under consideration an order of a state public service commission fixing water rates. The rate was attacked on the ground that it was confiscatory. The Court said:

"Looking at the entire opinion we are compelled to conclude that the supreme court (of the State) interpreted the statute as withholding from the courts power to determine the question of confiscation according to their own independent judgment when the action of the Commission comes to be considered on appeal.

"The order here involved prescribed a complete schedule of maximum future rates and was legislative in character. Prentis v. Atlantic Coast Line Co., 211 U. S. 210, 53 L. Ed. 150, 29 Sup. Ct. Rep. 67; Lake Erie & W. R. R. Co. v. State Public Utility

Commission, 249 U. S. 422, 424, 63 L. Ed. 684, 687, P. U. R. 1919D, 459, 39 Sup. Ct. Rep. 345. In all such cases, if the owner claims confiscation of his property will result, *the state must provide a fair opportunity for submitting that issue to a judicial tribunal for determination upon its own independent judgment as to both law and facts;* otherwise the order is void because in conflict with the due process clause, 14th Amendment." (Italics mine.)

In the case of Prentis v. Atlantic Coast Line Co., 211 U. S. 210, 228, it was said:

"Whether their property was taken unconstitutionally depends upon the valuation of the property, the income to be derived from the proposed rate and the proportion between the two—pure matters of fact. When those are settled the law is tolerably plain. All their constitutional rights, we repeat, depend upon what the facts are found to be." (Per Mr. Justice Holmes.)

In Chicago, B. & Q. R. R. Co. v. Osborne, 265 U. S. 14, 16, it was said:

"When such a charge as the present is made it can be tried fully and fairly only by a Court that can hear any and all competent evidence, and that is not bound by findings of the implicated Board for which there is any evidence, always easily produced." (Per Mr. Justice Holmes.) See also Reagan v. Farmers' Loan & Trust Co., 154 U. S. 362, 399.

The rule above announced has been followed by this Court in the following cases: Lone Star Gas Co. v. State, 137 Texas 279, 153 S. W. (2d) 681, 699, par. 20; Railroad Commission v. Houston & T. C. Ry. Co., 90 Texas 340, 38 S. W. 750; and Gulf, Colorado & Santa Fe Ry. Co. v. Railroad Commission, 102 Texas 338, 113 S. W. 741, 116 S. W. 795; Stockwell v. State, 110 Texas 550, 221 S. W. 932, 12 A. L. R. 1116.

This suit certainly involves the question as to whether the order entered by the Railroad Commission amounts to confiscation of contestants' vested property rights, and under the above decisions contestants are entitled to have that issue determined by the court upon "its own independent judgment as to both law and facts." The effect of the majority opinion is to overrule the holding of this Court in the cases last above cited.

Moreover, as pointed out in the Trem Carr case (Railroad

Commission v. Shell Oil Co., 139 Texas 66, 161 S. W. (2d) 1022, 1028), the doctrine that the administrative agency should find the facts and that its finding should be conclusive if supported by evidence is foreign to the law of this State. Such doctrine seems to have had its origin in the statutory enactments by the Congress of the United States. These statutes usually provide: "The findings of the Board (or Commission) as to the facts, if supported by the evidence, shall be conclusive." Mr. Stason in his article in 89 Pennsylvania Law Review, p. 1026, lists nineteen such statutes so enacted by the Congress of the United States. *We have no such statute in this State relating to Rule 37 cases.*

The Act here in question provides for a testing of such orders in the district court, in the following language:

"Sec. 8. Any interested person affected by the conservation laws of this State relating to crude petroleum oil or natural gas, and the waste thereof, including this Act, or by any rule, regulation or order made or promulgated by the Commission thereupon, and who may be dissatisfied therewith, shall have the right to file a suit in a court of competent jurisdiction in Travis County, Texas, and not elsewhere, against the Commission, or the members thereof, as defendants, to test the validity of said laws, rules, regulations or orders. Such suit shall be advanced for trial and be determined as expeditiously as possible and no postponement thereof or continuance shall be granted except for reasons deemed imperative by the Court. In all such trials, the burden of proof shall be upon the party complaining of such laws, rule, regulation or order; and such laws, rule, regulation or order so complained of shall be deemed prima facie valid. (As amended Acts 1932, 42nd Leg., 4th C. S., p. 3, ch. 2, sec. 8; Acts 1935, 44th Leg., p. 180, ch. 76, sec. 14.)" Vernon's Ann. Civ. St. Art. 6049c, sec. 8.

It will be noted that the statute authorizes the filing of a "suit" to test the validity of proration orders issued by the Railroad Commission, and further provides: "In all such trials, the burden of proof shall be upon the party complaining of such laws, rule, regulation or order; and such laws, rule, regulation or order so complained of shall be deemed prima facie valid." It is clear from the above that it was intended there should be a "trial" of the issue in court, and no limitation is placed on the sort of trial to be had, except that it must be one to test the validity of the order, and the burden of proof is on the one complaining thereof. A "trial" as commonly understood contem-

plates a judicial examination of all the issues of law and fact. 64 C. J. 31. That was the only kind of trial known to the courts at the time the statute was enacted. In the case of Morrow v. Corbin, 122 Texas 553, 560, 62 S. W. (2d) 641, 645, this Court said:

"Briefly stated, what we here intend to say is that the jurisdiction of trial courts, under the Constitution, once it attaches, embraces every element of judicial power allocated to those tribunals, and includes: (1) *The power to hear the facts*, (2) *the power to decide the issues of fact made by the pleadings*, (3) *the power to decide the questions of law involved*, (4) *the power to enter a judgment on the facts found in accordance with the law as determined by the court*, (5) *and the power to execute the judgment or sentence.*"

There cannot be a judicial examination of what the facts are without the right to pass on the credibility of the witnesses and the weight to be given to the evidence. It would indeed be a very limited trial if the court was not only bound to accept as literally true each item of testimony that was introduced, but was denied the right to determine what weight should be given to the various circumstances in evidence. The very fact that the statute provides that the burden of proof shall be on the party complaining of the order evidences legislative intent that the court should determine whether the burden of proof had been met, and this cannot be done without weighing the evidence and passing on the credibility of the witnesses.

In the case of Railroad Commission v. Houston & T. C. R. R. Co., 90 Texas 340, 38 S. W. 750, 756, the Court had under consideration statutes which authorized a suit in the district court to test the validity of any order of the Railroad Commission fixing freight rates. The statute was very much like the one here under consideration. It provided as follows:

"Article 4566. In all trials under the foregoing article the burden of proof shall rest upon the plaintiff, who must show by clear and satisfactory evidence that the rates, regulation, order, classification, act or charges complained of are unreasonable and unjust to it or them."

After referring to the fact that under the statutes in question a suit could be maintained to test the validity of the order of the Railroad Commission, either on the ground that it was confiscatory or was unreasonable or unjust, the court said: "In-

deed, the conferring of that jurisdiction upon the courts of itself imposed *the duty to try the case by the ordinary rules of procedure,* unless otherwise provided." (Italics mine.) I cannot distinguish that case from the case here under consideration.

It would certainly put the trial judge in a strait jacket if he were required to pass on the issue as to whether or not the contestant had met the burden of proof, but was not permitted to pass on the credibility of the witnesses nor the weight to be given to their testimony. Moreover, upon the trial of such a case, as soon as a single witness testified to facts which would sustain the permit, it would become useless for the court to proceed further, for, regardless of the evidence to the contrary, the court would be powerless to do otherwise than to sustain the permit. There is no provision in the Act here under consideration which requires any such construction. The trial court in this case passed on the credibility of the witnesses and the weight to be given to their testimony and has determined that the contestants have met the burden of proof.

But if the Act in question had undertaken to confer upon the Commission the power to determine the facts, it would be unconstitutional and void. Our Constitution carefully divides the powers of government into three departments—the executive, legislative, and judicial—and further provides: "and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instance herein expressly permitted." Under the above provision of the Constitution the Railroad Commission must belong either to the executive department or to the judicial department. It cannot belong to both of them. Undoubtedly it is a branch of the executive department. White v. Maverick County Water Control and Improvement District No. 1 (Com. App.), 35 S. W. (2d) 107. Therefore it cannot perform judicial functions. It cannot adjudicate property rights. White v. Maverick County Water Control and Improvement District No. 1, supra; Board of Water Engineers v. McKnight, 111 Texas 82, 229 S. W. 301. The judicial power of this State is vested in the courts. Constitution, Art. V, Sec. 1. To the courts have been committed the power and responsibility of adjudicating the vested property rights of the people. These powers and responsibilities may not be resigned nor ceded away by the courts. Neither may they be alienated by the Legislature. Ex parte Ginnochio, 30 Texas Crim. App. 584, 18 S. W. 82; Burgess v. American Rio Grande Land and Irrigation Co. (Civ. App.), 295 S. W. 649 (writ refused) ; Whitham & Co. v. Hendrick (Civ. App.), 1 S. W. (2d) 907 (writ

refused) ; 9 Tex. Jur. 454, 459. Fundamentally, it is the task of the courts to mete out justice in accordance with the statutes and the Constitution. This they cannot do if they are not permitted to pass on the credibility of the witnesses and the weight to be given to their testimony. They must be allowed to find the facts in the case.

Our Constitution contemplates that all questions of fact shall be tried out and determined in court and, if a jury is demanded, by a jury. Article V, Section 10, of the Constitution provides that "in the trial of all causes in the District Courts, the plaintiff or defendant shall, upon application made in open court, have the right of trial by jury." In the case of Tolle v. Tolle, 101 Texas 33, 104 S. W. 1049, the Court had under consideration the question as to whether a party was entitled to have the facts determined by a jury in a probate proceeding in the district court. The Court there said:

"Section 10 of Article V of our Constitution provides that 'in the trial of all causes in the District Courts, the plaintiff or defendant shall, upon application made in open court, have the right of trial by jury; * * *.' Language cannot be made more comprehensive than this. Hence if a probate proceeding is properly styled a 'cause' this section undoubtedly gives a right of trial by jury. Bouvier defines a cause as 'a suit or action. Any question civil or criminal contested before a court of justice.' The questions in this case are certainly questions contested before a court. * * * It is not a question of the nature of the contest, but merely is there a matter of fact for a jury to determine." (Italics mine.)

In the case of White v. White, 108 Texas 570, 196 S. W. 508, L. R. A. 1918A, 339, this Court considered the validity of a statute which undertook to confer upon a commission the right to determine the facts in a lunacy case. The Court in holding the Act void said:

"A trial by jury means something more than a hearing before a commission such as that prescribed by said Act. With us, in civil cases, it means a due and orderly trial before the statutory number of men, properly qualified for such jury service, impartial, residing within the jurisdiction of the court, drawn and selected according to statute, duly empaneled under the direction of a court of competent jurisdiction, and sworn to render an impartial verdict according to the law and the evidence, the hearing to be in the presence and under the supervision of a

court duly authorized and empowered to rule on the evidence, and except in courts of justices of the peace, to charge on the law of the case, and to set aside the verdict if, in the opinion of the court, it is contrary to the law and the evidence."

As previously pointed out, it was held in Ohio Valley Water Co. v. Ben Avon Borough, 253 U. S. 287, 40 S. Ct. 527, 64 L. Ed. 908, 914, that where vested property rights are involved, as they are in this case, the order of the Railroad Commission is void because in conflict with the due process clause, unless the statute permitted the court to determine all issues of fact upon its own independent judgment.

In the case of Dupree v. State, 102 Texas, 455, 119 S. W. 301, this Court held that a statute which gave the sheriff the authority to determine the extent of the damages to sequestered property was unconstitutional because it undertook to confer judicial powers upon the sheriff. See also American Mortgage Co. v. Samuell, 130 Texas 107, 108 S. W. (2d) 193, par. 2. If such a statute is void because it confers upon the sheriff, a member of the executive department, the power to find the facts as to the amount of damages, why is not a statute void which undertakes to confer upon the Railroad Commission, an administrative agency, the power to determine the issue of fact as to the amount of land owned or in good faith claimed by one of the parties when this issue of fact is decisive of the issue of confiscation?

In the case of Stockwell v. State, 110 Texas 550, 221 S.W. (2d) 932, 12 A. L. R. 1116, this Court held that a statute which purported to confer upon the Commission of Agriculture the exclusive authority to determine the fact issue as to whether or not plants were so diseased as to constitute a public nuisance was unconstitutional because it attempted to confer judicial functions upon an administrative agency.

The very moment that we grant to the Railroad Commission, an administrative agency, the right to pass on the credibility of the witnesses and the weight to be given to the evidence on the issue as to whether the landowner's oil is being confiscated by reason of an order of the Railroad Commission, we destroy the right of trial by jury—a right that has made us a free people.

The question here involved was squarely presented and was determined contrary to the holding of the majority opinion in the following cases: Marrs v. Railroad Commission, 142 Texas

293, 177 S. W. (2d) 941; Railroad Commission v. Shell Oil Co., 139 Texas 66, 161 S. W. (2d) 1022; Railroad Commission v. Houston & T. C. Ry. Co., 90 Texas 340, 38 S. W. 750; Lone Star Gas Co. v. State, 137 Texas 279, 153 S. W. (2d) 681, 699, par. 20; and Gulf, Colorado & Santa Fe Ry. Co. v. Railroad Commission, 102 Texas 338, 113 S. W. 741, 116 S. W. 795. The holding is also contrary to the holding of this Court in Tolle v. Tolle, 101 Texas 33, 104 S. W. 1049; White v. White, 108 Texas 570, 196 S. W. 508, L. R. A. 1918A, 339; and Stockwell v. State, supra, and the holding of the Supreme Court of the United States in Crowell v. Benson, 285 U. S. 22, 60, 52 S. Ct. 285, 76 L. Ed. 598, and Ohio Valley Water Co. v. Ben Avon Borough, 253 U. S. 287, 40 S. Ct. 527, 64 L. Ed. 908, 914.

As previously pointed out, the Federal decisions which permit Bureaus to find the facts are applicable only when confiscation is not involved, and they are based upon statutes granting such rights. The majority opinion does not assert that the statute here involved confers upon the Commission the power to find the facts or to make its findings binding upon the court. It is not contended that there is any such statute in this State. In fact, the majority opinion on original hearing does not assert that there is a single logical reason for the rule followed by it. Its sole ground for so holding is found in the following language:

"The Supreme Court has heretofore decided the question before us, and but for the conflict our duty would be to follow the prior pronouncements of this court. In such a situation, it is not permissible for the present justices to decide the cases in accordance with their personal views of what the law should be. Our duty is to follow the pronouncements of our predecessors."

The prior decision referred to is the case of Gulf Land Co. v. Atlantic Refining Co., 134 Texas 59, 131 S. W. (2d) 72. In that case the trial court set aside the permit granted by the Railroad Commission and the Supreme Court affirmed that judgment on the ground that it was *undisputed* that the applicant was receiving his fair share of the oil without a second well. There was no issue of fact to be determined by either the Railroad Commission or the court. The statement as to what the holding of the Court would be in a case where the evidence was in dispute—a case not then before the Court— was wholly unnecessary to that decision. Since the rendition of the decision in the Gulf Land Company case this Court has held directly contrary to the dictum expressed therein in the following cases: Railroad Commission v. Shell Oil Co., Inc., 139 Texas 66, 161 S. W. (2d)

1022; Cook Drilling Co. v. Gulf Oil Corp., 139 Texas 80, 161 S. W. (2d) 1035; Marrs v. Railroad Commission, 142 Texas 293, 177 S. W. (2d) 941; and Corzelius v. Harrell, 143 Texas 509, 186 S. W. (2d) 961.

Moreover, the dictum expressed in the Gulf Land Company case (and followed in the majority opinion) was based on the erroneous theory that the right to review an order of the Railroad Commission under an allegation of confiscation existed only by virtue of the statute, when in truth it exists by virtue of the Constitution and is in nowise dependent upon the existence of a statute. Crowell v. Benson, 285 U. S. 22, 60, 52 S. St. 285, 76 L. Ed. 598; Ohio Valley Water Co. v. Ben Avon Borough, 253 U. S. 287, 40 S. Ct. 527, 64 L. Ed. 908, 914; Railroad Commission v. Houston & T. C. Ry. Co., 90 Texas 340, 38 S. W. 750; Lone Star Gas Co. v. State, 137 Texas 279, 153 S. W. (2d) 681, 699, par 20; and Gulf, Colorado & Santa Fe Ry. Co. v. Railroad Commission, 102 Texas 338, 113 S. W. 741, 116 S. W. 795.

Consequently the statements contained in the Gulf Land Company case, and now followed in the majority opinion, were not only dictum wholly unnecessary to that decision, but they were contrary to the well-established principles of law as theretofore announced by this Court and the Supreme Court of the United States. If the Court is to follow "the pronouncements of · our predecessors" it should follow the latest expressions of this Court as contained in Railroad Commission v. Shell Oil Corp., 139 Texas 66, 161 S. W. (2d) 1022; Cook Drilling Co. v. Gulf Oil Corp., 139 Texas 80, 161 S. W. (2d) 1035; Marrs v. Railroad Commission, 142 Texas 293, 177 S. W. (2d) 941; and Corzelius v. Harrell, 143 Texas 509, 186 S. W. (2d) 961, which are based on sound reason and sustained by ample precedents, instead of following the erroneous and unsound dictum contained in the Gulf Land Company case. I do not consider the opinion in the Gulf Land Company case binding upon this Court under the facts here involved, in view of the many holdings of this Court to the contrary where the question was directly involved.

The majority opinion cites the Shupee case (Shupee v. Railroad Commission, 123 Texas 521, 73 S. W. (2d) 505) as authority for its holding. But that case nivolved no issue of confiscation of vested property rights. Shupee was seeking the privilege of using the public highways of the State in carrying on his business. He had no vested property right in the highways. No

issue of confiscation was involved in that case. Therefore the two cases are entirely unlike.

In the opinion on motion for rehearing the majority, for the first time, undertake to give a reason (other than the precedent established by the erroneous dictum in the Gulf Land Company case) for their holding. Let's examine the reasons given.

The Court cites Trimmier v. Carlton, 116 Texas 572, 296 S. .W. 1070, and 11 Amer. Jur. 794 as authority for the proposition that since the Legislature may find facts relating to the necessity for and validity of a legislative act, it may delegate to an administrative agency the authority to find such facts under similar circumstances and to make rules thereunder which have the force of legislation, and when this is done ap resumption will arise in favor of the rule so adopted. This may be conceded, but it has no application here. In the first place, such a presumption is a rebuttable one and when the validity of the statute, rule, or regulation is attacked on the ground of confiiscation, 'the Court will hear and weigh the evidence to see if the statute, rule, or regulation is confiscatory. Houston & T. C. Ry. Co. v. City of Dallas, 98 Texas 396, 415, 84 S. W. 648, 653, and authorities heretofore cited. In the second place, there is a vast difference between the presumption of the existence of facts justifying the enactment of legislation and the right of a citizen to a hearing in court on the facts when it is sought to enforce the legislation against the rights of the citizen. If the presumption in favor of the validity of an Act of the Legislature or a rule of an administrative agency forecloses all issues of fact both as to the validity of the Act or rule and the application thereof to the citizen, then a citizen could never test its validity, or application in court on the ground that it destroyed his constitutional rights. As said by Mr. Justice Holmes in Prentis v. Atlantic Coast Line, 211 U. S. 210, 228, "Legislation cannot bolster itself up in that way." The Legislature has the right to enact legislation and the legislation will be presumed prima facie to be valid, but when it is sought to apply the legislation to the rights of a particular individual, such individual has the right to trial in court on the issue as to whether, in its application, the Act confiscates his property or otherwise .destroys his constitutional rights. Certainly a member of the executive branch, whether it be a single individual or a commission, has no right to find facts affecting the private rights of individuals. Dupree v. State, 102 Texas 455, 119 S. W. 301, par. 11.

As said by the Court in Henderson v. Miller (Civ. App.), 286 S. W. 501, 506 (writ refused), "It is manifest that neither the board of county school trustees, nor the state superintendent, nor the state board of education, is vested with any jurishdiction to determine the constitutionality of any statute, or the question whether or not any action by any board of school trustees is violative of constitutional rights. Authority to determine such questions is exclusively the function of the judiciary, and therefore the court did not err in overruling the exception to the jurisdiction of the trial court."

The opinion also cites the case of William v. Castleman, 112 Texas, 193, 247 S. W. 263, relating to commissioners' courts, as authority for the proposition that an administrative agency may find the facts and that its findings are not subject to review. It will be noted however, that the very case cited holds that a commissioners' court, when acting within the powers conferred upon it, is a *court* of general jurisdiction." Morevor, the Supreme Court was there considering a collateral attack upon an order issued by the commisioners' court in dividing the county into justice precincts, a matter which had been clearly committed to the discretion of the commissioners' court—one of purely public interest in nowise involving the private property rights or other constitutional rights of an individual. If the case had been one in which the commissioners' court was attempting to appropriate the land of an individual for use in building a public road it would be more nearly in point. But certainly under such circumstances no one would contend that a finding made by the commissioners' court that the land belonged to the county would be binding upon the individual who was seeking to recover his land.

If the holding announced in the majority opinion is applicable to the rulings of every other board, bureau, and commission in this State. The effect will be to deprive the individual of the right to a trial by jury in all cases in which a board, bureau, or commission is involved, even though it affects his constitutional rights. I cannot subscribe to such a holding.

Opinion delivered November 27, 1946.