Don M. DAVIS et al., Appellants,

v.

ZONING BOARD OF ADJUSTMENT OF
CITY OF LUBBOCK, Texas, Appellee.

No. 7189.

Court of Civil Appeals of Texas.

Amarillo.

Oct. 29, 1962.

Rehearing Denied Dec. 3, 1962.

McWhorter, Cobb, Johnson & Cobb, Lubbock, for appellants.

Fred O. Senter, Jr., City Atty., J. Worth Fullingim, Asst. City Atty., Lubbock, for appellee.

CHAPMAN, Justice.

This is an appeal from a district court judgment upholding the action of the Zoning Board of Adjustment of the City of Lubbock denying an application for the granting of a special exception to permit the erection of a building on Lot 8 in Block 1 Ridgelawn Addition to the City of Lubbock to be occupied by a pharmacy. Application was made by Don M. Davis and his mother, Mrs. Morris Davis to the Board for the granting of a special exception under the provisions of Section 19.6–2–6 of the zoning ordinance of the city.

The creation of said Board of Adjustment has legislative authority in Article 1011g, Vernon's Ann.Civ.St.Tex. If we understand the record, Ordinance 1695 of the City of Lubbock having to do with zoning was passed under the authority of the statute just above named and was in existence at the time of the application here being considered.

Appeal is perfected to us upon two points. The first point asserts that the Zoning Board of Adjustment acted illegally in denying appellants' request for there was no substantive evidence offered to support the action of the Board. But on the other hand, there was legal evidence introduced by appellants meeting the requirements for the special exception requested. Point two asserts error of the court in failing to recognize that the proof required for the granting of a "special exception" is less onerous than that required in the case of a "variance."

The court in announcing his judgment sustaining the Board made comments which are included in the transcript and designated *FINDINGS OF FACT*. Those comments are as follows:

"I really expected more testimony on the matter of traffic and things of that kind. As I recall, Mr. Smith did testify that in his opinion there would be an increase in traffic, whether he said an increase in traffic hazards or not, I don't recall, but I still think the case is governed by the substantial evidence rule and under Section 19.4–2. 'The burden of proof is on applicant to establish the facts necessary which the Zoning Board of Adjustment must find before granting any special exception, variance or appeal as herein contained.' Section 19.6–1 says 'A special exception may be granted an applicant when the Board of Adjustment finds:', and then 19.6–1–1 'that the granting of such exception will not be injurious or otherwise detrimental to the public safety— public health, safety, morals and the general welfare of the general public', and 19.6–1–2, 'that the granting of such exception will not be substantially or permanently injurious to the property or improvements in such zone or neighborhood in which the property is located', and 19.6–1–3 'that the granting of such exception will be in harmony with the general purpose and intent of this ordinance.' Obviously, the Board didn't find those things or not all of them, at least, because they denied the exception. And upon my conclusion that the substantial evidence rule gov-

erns and that what was offered in evidence before the Board itself is not binding and that this Court only has to determine whether or not there did exist facts at the time of the hearing on October 20, 1960, upon which the Board could have justified their findings. I think that I would have to rule that there are—there were facts coming within the purview of the substantial evidence rule which would have justified their findings and therefore I will deny the motion of the applicant to set aside the findings of the Board of Adjustment and will affirm the action of the Board."

■ We agree with the trial court that this is a proper case for the application of the substantial evidence rule.

The section of Ordinance 1695 of the City of Lubbock alleged by appellants as governing the subject application is 19.6–2–6 and reads as follows:

"Permit in any district[1] such modification of the requirements of this ordinance as the Board may determine necessary to secure an appropriate development of a lot where adjacent to such lot on two or more sides there are dwellings that do not conform to these regulations."

Section 19.5–1 of the Ordinance reads as follows:

"A special exception is a permission given by the Board properly authorized by this ordinance in specific cases for an applicant to use his property in a manner contrary to the provisions of this ordinance, provided such use subserves the general welfare and preserves the community interest."

Section 19.6 details the various special exceptions the Board may consider in granting an exception and those found applicable by the trial court to this case are 19.6–1–1, 19.6–1–2, and 19.6–1–3 quoted above in the court's *FINDINGS OF FACT*.

Much of the law decided under the substantial evidence rule in this state has grown out of judicial reviews made by our courts in cases appealed from administrative hearings by the Railroad Commission. Since a proper decision of this case must depend upon the pronouncement of our appellate courts, particularly our Supreme Court, in those cases we believe it well to briefly review some of those we consider most pertinent to the questions here involved.

In an article carried in Texas Bar Journal in 1958[2] Justice Griffin of our Supreme Court in reviewing the more important of these rule 37 cases,[3] and particularly after stating the Supreme Court holding in Gulf Land Co. et al. v. Atlantic Refining Co. et al., 134 Tex. 59, 131 S.W.2d 73 and Railroad Commission et al. v. Shell Oil Co., Inc., et al., 139 Tex. 66, 161 S.W.2d 1022 said:

"With this holding, and the holding in the Gulf Land Co. case, it is no wonder the Bar was confused as to the exact nature and scope of the review which a trial court must give to an appeal from an administrative decision.[4]

"The Supreme Court in 1946 recognized that there was a conflict in its previous decisions, and in the case of Trapp et al. v. Shell Oil Co., Inc., 145 Tex. 323, 198 S.W.2d 424, resolved the conflict by approving the holding of the court in the Gulf Land Co. case."[5]

1. We assume that "district" as used in this section means zoning district.

2. Texas Bar Journal, December 22, 1958, beginning on page 721.

3. Rule 37 cases were those coming under the Railroad Commission rule controlling spacing of wells.

4. The Growing Substantial Evidence Rule, Texas Bar Journal, December 22, 1958, page 742.

5. i. d. page 743.

However, in the Trapp case the Supreme Court approved the definition in the "Trem Carr" case [6] for the substantial evidence rule in the following language:

"We shall not undertake to formulate a comprehensive definition of the rule, but it is believed that this Court made a fair statement of the rule in the Trem Carr case, to which we have referred in our original opinion. Railroad Commission v. Shell Oil Co., 139 Tex. 66, 161 S.W.2d 1022, 1029. Speaking of the substantial evidence rule it is said: 'In such a case the issue is not whether or not the agency came to the proper fact conclusion on the basis of conflicting evidence, but whether or not it acted arbitrarily and without regard to the facts. Hence it is generally recognized that where the order of the agency under attack involves the exercise of the sound · judgment and discretion of the agency in a matter committed to it by the Legislature, the court will sustain the order if the action of the agency in reaching such conclusion is reasonably supported by substantial evidence. *This does not mean that a mere scintilla of evidence will suffice, nor does it mean that the court is bound to select the testimony of one side, with absolute blindness to that introduced by the other.* After all, the court is to render justice in the case. The record is to be considered as a whole, and it is for the court to determine what constitutes substantial evidence. *The court is not to substitute its discretion for that committed to the agency by the Legislature, but is to sustain the agency if it is reasonably supported by substantial evidence before the court. If the evidence as a whole is such that reasonable minds could not have reached the conclusion that the agency must have reached in order to justify its action, then the order must be set aside.'*" (Emphases by the Supreme Court)

The next leading case we wish to discuss by the Supreme Court on the meaning of the substantial evidence rule concerning the scope of judicial review in a suit to test the validity of an administrative hearing is that of Hawkins et al. v. Texas Co., 146 Tex. 511, 209 S.W.2d 338. The court in that case, speaking through Justice Smedley, said:

"* * * the finding of the Commission [in our case the Zoning Board of Adjustment] will be sustained by the court if it is *reasonably* supported by substantial evidence, meaning evidence introduced in court. The word "reasonably" has been deliberately used in the statement and its use gives to the judicial review a broader scope than it would have if *some* substantial evidence were regarded sufficient of itself to sustain the Commission's order. It is for the court to determine as a matter of law the reasonableness of the support afforded by substantial evidence. * * * (Emphasis by Supreme Court)

"In making its decision of this question the court examines and takes into consideration all of the evidence, the entire record."

The court then goes on to say in effect that the trial on the appeal from the administrative agency does not mean a trial as of the ordinary civil suit in which the court makes its own findings based upon a preponderance of the evidence, but it does mean there shall be a trial in so far as the facts are concerned and the court determines from all the evidence before it whether the action of the administrative body is or is not reasonably supported by substantial evidence. The court then quotes with approval from the Trem Carr case wherein it was quoted with approval in the Trapp case to the effect that a mere scintilla of evidence will not suffice.

6. Trem Carr was the name known by the profession for Railroad Commission v.

Shell Oil Co., Inc., 139 Tex. 66, 161 S.W. 2d 1022.

With the above pronouncements by the court concerning the scope of judicial review from the administrative hearing in mind, let us now examine the record to determine as a matter of law if the trial court was correct in holding the conclusions reached by the Zoning Board of Adjustment were reasonably supported by substantial evidence.

First, let us say that the trial court was not limited to the evidence taken before the agency but could hear and consider any relevant legal testimony of the conditions existing at the time of the administrative hearing. Trapp et al. v. Shell Oil Co., Inc., 145 Tex. 323, 198 S.W.2d 424.

In all such trials, where the conclusions reached by the agency are appealed from, the burden of proof is upon the party complaining of such law, rule, regulation, or order; and such law, rule, regulation, or order shall be deemed prima facie valid. Gulf Land Co. et al. v. Atlantic Refining Co. et al., 134 Tex. 59, 131 S.W.2d 73, 81.

J. R. Smith, zoning administrator for the City of Lubbock, testified that notices of appellants' application were sent to all property owners within two hundred feet of the lot in question, that no objections to the zoning exceptions sought were made by any person; that witnesses before the Zoning Board testified the lot was unfit for residential purposes and that it was undisputed that nonconforming uses are on two sides of the property, one an antique shop and the other one a beauty shop. He identified a number of pictures and sketches which were offered in evidence at the trial and before the agency showing the proposed pharmacy, the beauty shop, and antique shop and the picture of the Methodist Hospital immediately across the street northwest from Lot 8 involved. The hospital is a huge plant showing to be seven or eight stories high and apparently covering most of the block.

Mr. McCain, the operator of the antique shop, testified it would be a benefit to the neighborhood to grant the exception; that the block has been going down ever since the Methodist Hospital was constructed; and that the construction of the proposed pharmacy would improve the corner 100 per cent. He did admit a new home was under construction at the far end of the block.

Mr. Barry testified he owned some vacant property north of the Davis lot and he would not consider putting a home on the property, due to its location.

Mr. Stacy testified he owned property in the block and that the construction of the proposed pharmacy would result in cleaning up the Davis lot and would help the general appearance of the area.

Mr. Ward testified he lived in the vicinity of Lot 8; that he owns a ten-room house of brick veneer construction and three lots east of the Davis property; that business was already in the neighborhood due to the location of the Methodist Hospital; that building a new residence on Lot 8 would not upgrade the area; and that construction of the proposed pharmacy would be a definite improvement and he had no objection to the granting of the exception.

Mr. Don Davis, one of the appellants, testified that his plan of construction would provide adequate off-street parking, which he indicated would require few places because of the adequate staff with which they operate a pharmacy; that vacant property was north of him but was not suitable for residence because of the Methodist Hospital.

The exhibits introduced show thirteen people in the area, in addition to the Davises, signed the petition for the exception and not one single person from any source objected except the City Traffic Engineer, Bill McDaniel, and the Director of Planning and Traffic for the city, Robert Burr.

The maps introduced show the property immediately west of Lot 8 and south of the hospital is zoned for clinics.

If the testimony stopped here, we believe there would not be any possible question but that the finding of the agency was not reasonably supported by substantial evidence. The only testimony to offset it is that of the two city employees last named.

Mr. McDaniel testified that placing a pharmacy on the lot would increase traffic hazards in the area.

Mr. Burr testified that the "construction of another business" in the area would devaluate the remaining property in the block for residential purposes, because it would increase traffic and cause more illumination, and then he speculated that it would cause more trash.

When the entire record is looked to, as we are required to do under Trapp, above quoted, we cannot see the testimony of the two city employees as constituting more than a scintilla of evidence, which will not suffice. Trapp et al. v. Shell Oil Co., Inc., 145 Tex. 323, 198 S.W.2d 424 supra; Hawkins et al. v. Texas Co., 146 Tex. 511, 209 S.W.2d 338 supra.

The testimony shows the property would be much more valuable when used as a pharmacy and is practically valueless as it is. The record as a whole shows the traffic is already there from the extremely large hospital operation and that Lot 8 has nonconforming property on two sides in the same block and that the block west is zoned for clinics.

The San Antonio Court of Civil Appeals has held in Brehmer v. City of Kerrville et al., Tex.Civ.App., 320 S.W.2d 193 (NWH) that where the only complaint made by property owners in the neighborhood is that it might increase traffic on an already busy thoroughfare, such testimony was not sufficient to deny an exception. In our case even the property owners did not complain, but to the contrary requested that the exception be granted. If that case is legally correct, the only evidence with any probative force whatever left to deny the application, is the testimony by Mr. Burr

that construction of "another business" would devalue the property. He did not say construction of the proposed pharmacy would devalue the other property, but "another business." Testimony that indefinite would appear to us to be of little, if any, probative force. Additionally, there is the testimony of all the people owning property in the area who testified, saying the proposed exception would increase the value of the other property in the area.

Our Supreme Court has held, "cities can establish zoning districts under the police power to safeguard the health, comfort and general welfare of their citizens;" but that this power is not an arbitrary one and that our courts must determine whether zoning ordinances constitute a reasonable exercise of that power. City of Corpus Christi v. Allen et al., 152 Tex. 137, 254 S.W.2d 759.

There was simply not any probative evidence by which the agency and the trial court could find that granting the exception would be "injurious or otherwise detrimental to the public health, safety, morals, and the general welfare of the general public," nor

That it would be substantially or permanently injurious to the property or improvements in such a zone or neighborhood," nor

That the granting of such exception would be out of harmony with the general purpose and intent of the ordinance."

As a matter of fact, the proposed building would furnish a very attractive buffer between the hospital and the other part of the block most suitable for residential purposes. It would not, under the record here, extend business either south or east because there are already nonconforming uses there. The testimony is without contradiction that the property just north is not suitable for residences because of its proximity to the hospital. It is difficult for us to conceive of a case where the evidence showed before the agency and the court more merit for the application of the exception provided for in the statute above

**900**

quoted and in the applicable section of the ordinance. The above quote from the Supreme Court speaking through Justice Smedley in the Hawkins case seems a sufficient legal ground for us to say even if there was *some* substantial evidence, that neither the finding of the agency nor the judgment of the court is *reasonably* supported by substantial evidence. Therefore, we can only come to the conclusion that the exception was illegally denied. (Emphasis added)

Because of the disposition we have made of the first point and conclusion we have reached, it is unnecessary to pass on the second point. Accordingly, the judgment of the trial court is reversed and rendered and the court is instructed to render judgment granting the exception.