**TEXAS ALCOHOLIC BEVERAGE COMMISSION, Appellant,**

v.

**GOOD SPIRITS, INC., Appellee.**

No. 6193.

Court of Civil Appeals of Texas, Waco.

April 30, 1981.

Mark White, Atty. Gen., John W. Fainter, Jr., First Asst. Atty. Gen., Ted L. Hartley, Executive Asst. Atty. Gen., W. Barton Boling, Asst. Atty. Gen., El Paso, W. Reed Lockhoof, Asst. Atty. Gen., Austin, for appellant.

William F. Stolhandske, Stolhandske, Simmons & Stolhandske, San Antonio, for appellee.

## OPINION

JAMES, Justice.

This is an appeal from a judgment of a district court reversing an order of the Texas Alcoholic Beverage Commission. We affirm the district court's judgment.

On September 28, 1978, Plaintiff-Appellee Good Spirits, Inc., a Texas Corporation, made applications for a Wine Only Package Store Permit and for a Beer Retailer's Off-Premises License. On October 25, 1978, a hearing was held before the County Judge of Bexar County after which both of Good Spirits' applications were approved. Said order of the County Court was appealed to the Texas Alcoholic Beverage Commission (hereinafter called "Commission").

On January 17, 1979, a hearing was held before the Hon. John Bingaman, a Hearings Examiner of and for the Commission, after which said examiner tendered his "Proposal for Decision" which included findings of fact, conclusions of law, and a recommendation that the applications made by Good Spirits be granted. However, on March 19, 1979, the Commission acting by and through Hon. Joe Darnall, Assistant Administrator of the Commission, entered an order wherein the findings of fact made by the Hearings Examiner were adopted but which order refused and denied the applications in question. From this order of the Commission, Good Spirits perfected its appeal to a District Court of Bexar County, which court, sitting without a jury, after hearing, entered judgment reversing the Commission's order and ordered the applications in question to be granted and the licenses issued. In essence, the trial court found that there was not substantial evidence to support the Commission's order, and that such order was arbitrary.

The Commission appeals from the trial court's judgment upon one point of error, to wit, that the trial court erred in not affirming the Commission's order because (Appellant says) the Commission's findings were reasonably supported by substantial evidence. We overrule this point of error and affirm the trial court's judgment.

The pertinent facts herein are virtually undisputed, and are fairly presented in the "findings of fact" as made (after certain amendments) by the Hearings Examiner and as adopted by the Commission, as follows, to wit:

"1. That on September 28, 1978, Good Spirits, Inc., made original application for a Wine Only Package Store Permit and a Beer Retailer's Off-Premises License for the premises located at 11743 West Avenue, San Antonio, Texas.

"2. That Thomas C. Reynolds is currently the president of the Applicant hereafter, Good Spirits, Inc.

"3. That Mr. Reynolds was approached in 1977 by a representative of Albertson's, Inc., with the idea of forming Good Spirits.

"4. That Albertson's is an out of state corporation with its main offices in Florida.

"5. That prior to being approached by Albertson's, Mr. Reynolds had no prior experience in the alcoholic beverage business.

"6. That the basic structure of Good Spirits was set up before Mr. Reynolds became involved.

"7. That Good Spirits is currently owned as follows: Thomas C. Reynolds—5300 shares voting stock; Mr. Harris—5300 shares voting stock; and Albertson's, Inc.—9,400 shares non-voting stock.

"8. That when a stockholder wishes to sell his stock, the other shareholders must either approve the sale or buy the stock themselves.

"9. That Good Spirits was financed with money from Mr. Reynolds, Mr. Harris, Albertson's, Inc., and a $200,000.00 loan from Frost National Bank in San Antonio, Texas, guaranteed by Albertson's, Inc.

"10. That Good Spirits subsequently renegotiated said note and later extinguished the Frost Bank note with a new note from Brooks Field National Bank in San Antonio, Texas, guaranteed by Mr. Reynolds personally.

"11. That in the first year of operation, Good Spirits made approximately $139,000.00 in note payments.

"12. That Good Spirits has paid no dividends to its stockholders.

"13. That Good Spirits makes a net profit of approximately 7% of sales.

"14. That Good Spirits presently holds permits for seven locations throughout the State of Texas.

"15. That if the permit and license applied for is granted, the operation under said permit and license would be virtually the same as the current operations at the seven other locations.

"16. That the current Good Spirits businesses operate as follows:

a. Each is located in an Albertson's grocery store.

b. The area in which Good Spirits operates inside Albertson's is not sectioned off from the area used by Albertson's.

c. Good Spirits pays 4½% of its gross sales to Albertson's to lease the premises for alcoholic beverage sales.

d. The life of the lease is one year after which time either party may terminate on thirty days notice.

e. The manager of the Albertson's grocery store is also the manager of Good Spirits.

f. The manager of Good Spirits is paid $125.00 per month.

g. The two assistant managers of each Albertson's are also under contract as the assistant managers of Good Spirits.

h. Good Spirits employs no one else except the president, Mr. Reynolds, who is paid $100.00 per week.

i. Good Spirits is not obligated to hire Albertson's employees but does so because of the marketing experience of the Albertson's manager and because it is economically profitable for Good Spirits.

j. Good Spirits has the right to hire and fire all employees.

k. Good Spirits' managers, subject to the approval of Mr. Reynolds, order and pay for alcoholic beverages as necessary and set competitive prices for the beverages Good Spirits sells.

l. Each Good Spirits location has its own checking account to pay for alcoholic beverages.

m. Good Spirits pays 1½% of its gross sales to Albertson's under a service contract.

n. The service contract may be terminated by either party upon thirty days notice.

o. Under the service contract, Albertson's provides accounting services, use of cash registers, and employees to ring up sales.

p. Included in the accounting service, Albertson's provides purchase and sales records, bank statements, filing of all tax returns, weekly sales reports, payment of license fees, payment of invoices and quarterly reports and financial statements.

q. Under the service contract Good Spirits also pays directly to Albertson's $1040.00 per quarter at each location for Albertson's employees to stock the shelves and cooler of Good Spirits.

r. Good Spirits has a right to hire an independent auditing firm to audit books which Albertson's keeps under the service contract for Good Spirits.

s. Other than a small sign inside the premises, Good Spirits does no advertising.

"17. Mr. Reynolds takes an active part in overseeing all aspects of the operation of Good Spirits."

The "Proposal for Decision" made by the Hearings Examiner went on to recite that "after consideration of the above findings of fact, the Hearings Examiner concludes the following (Conclusions of Law):

"A. That there is not substantial evidence to conclude that the Applicant, Good Spirits, Inc., is a subterfuge corporation for

Albertson's, Inc., a foreign corporation with its principal offices in a State other than Texas, in violation of Section 109.53 of the Texas Alcoholic Beverage Code.

"B. That there is not substantial evidence to conclude that the Applicant, Good Spirits, Inc., will not have and maintain exclusive occupancy and control of the entire licensed premises in every phase of the storage, distribution, possession, transportation, and sale of all alcoholic beverages purchased, stored or sold on the licensed premises, in violation of Section 109.53 of the Texas Alcoholic Beverage Code.

"C. That there is not substantial evidence to conclude that the Applicant, Good Spirits, Inc., has entered into a device, scheme, or plan which surrenders control of the employees, premises, or business of the said Applicant to persons other than the said Applicant, in violation of Section 109.53 of the Texas Alcoholic Beverage Code."

"RECOMMENDATION.

"It is the recommendation of the Hearings Examiner that the original application of Good Spirits, Inc., for a Wine Only Package Store Permit and a Beer Retailer's Off-Premises License be GRANTED."

As stated before, Mr. Darnall, the Assistant Administrator of and for the Commission, entered the order of the Commission dated March 19, 1979, now appealed from, wherein the findings of fact made by the Hearings Examiner were adopted, and based upon said fact findings, the Commission reached opposite conclusions of law from those of the Hearings Examiner, and thereupon refused and denied the applications in question.

More specifically, the conclusions of law found by the Commission are as follows:

"A. That there is substantial evidence to conclude that the Applicant, Good Spirits, Inc., is a subterfuge corporation for Albertson's, Inc., a foreign corporation with its principal offices in a State other than Texas, in violation of Section 109.53 of the Texas Alcoholic Beverage Code.

"B. That there is substantial evidence to conclude that the Applicant, Good Spirits, Inc., will not have and maintain exclusive occupancy and control of the entire licensed premises in every phase of the storage, distribution, possession, transportation, and sale of all alcoholic beverages purchased, stored, or sold on the licensed premises, in violation of Section 109.53 of the Texas Alcoholic Beverage Code.

"C. That there is substantial evidence to conclude that the Applicant, Good Spirits, Inc., has entered into a device, scheme, or plan, which surrenders control of the employees, premises, or business of the said Applicant to persons other than the said Applicant, in violation of Section 109.53 of the Texas Alcoholic Beverage Code."

At the time of the hearing before the Hearings Examiner, Appellee Good Spirits was currently operating seven locations in the State of Texas under Texas Alcoholic Beverage Commission Licenses, all upon the same mode of operation as was proposed to be done pursuant to the applications now in question. Moreover, prior to the commencement of the operation of any of these seven places of business, representatives of Appellee Good Spirits went to Austin, Texas, and had a face to face conference with Mr. Joe Darnall, the Assistant Administrator of the Commission hereinabove referred to, at which conference Appellee presented the instruments forming the basis of the proposed business operation to determine whether they were in proper form and not in conflict with the Code. More specifically, Appellee presented the proposed service agreements, employment contracts, leases, corporate structure, and operational procedures to be used in the conduct of business. At this conference Mr. Darnall thoroughly reviewed the matters presented and told Appellee's representatives that same were acceptable to the Commission and were not in violation of the Texas Alcoholic Beverage Code.

Since the Commission has approved Appellee's applications seven times previously, what is the reasoning behind the Commission's refusing the permits the eighth time?

Appellant Commission argues that in the instant hearing, the Commission learned for the first time that Albertson's, Inc., an out of State corporation, had gratuitously guaranteed a $200,000.00 note executed by Good Spirits to the Frost National Bank of San Antonio, and that this one act made Good Spirits a subterfuge corporation in violation of Section 109.53 of the Texas Alcoholic Beverage Code. We do not agree.

This $200,000.00 note transaction was originally consummated prior to the previous seven approvals of applications by Mr. Darnall, was a debt of Good Spirits, and was paid for entirely out of the funds of Good Spirits. This original note was thereafter renegotiated with Frost National Bank and subsequently paid off by the securing by Good Spirits of a new loan from Brooks Field National Bank in San Antonio, which last-mentioned note was guaranteed by Mr. Reynolds personally. In short, this debt complained of by the Commission was paid off in full prior to the hearing on the application in question. This loan was presented as a part of the operational structure of Good Spirits for the first seven approved applications.

We are unable to see how Albertson's guaranty of this $200,000.00 note for Good Spirits would cause Good Spirits to be and become a subterfuge corporation. After all, Albertson's was a minority non-voting stockholder of Good Spirits, and it was in the best business interest of Albertson's to assist Good Spirits in its financing. There is nothing in this record to show anything except that Good Spirits was operating independently and free of Albertson's control. Although both corporations worked in close conjunction with each other, pursuant to their agreements and operations, we fail to see any aspect thereof that constitutes a violation of the Texas Alcoholic Beverage Code.

We recognize that this Court is not to substitute its discretion for that committed to the agency by the Legislature, but is to sustain the agency if its decision is reasonably supported by substantial evidence. However, if the evidence as a whole is such that reasonable minds could not have reached the conclusion that the agency must have reached in order to justify its action, then the order must be set aside. *Trapp v. Shell Oil Co., Inc.,* (1946) 145 Tex. 323, 198 S.W.2d 424.

The substantial evidence rule is a court review device to keep the courts out of the business of administering regulatory statutes enacted by the Legislature, but it remains the business of the courts to see that justice is administered to competing parties by governmental agencies. *Lewis v. Metropolitan Savings and Loan Assn.,* (Tex.1977) 550 S.W.2d 11.

In the case at bar, we agree with the trial court that the Commission's findings and conclusions are not reasonably supported by substantial evidence, and that under the record before us, the Commission's order was arbitrary. We therefore affirm the trial court's judgment.

AFFIRMED.