COMMUNITY SAVINGS AND LOAN
ASSOCIATION OF COLLEGE
STATION, TEXAS, Appellant,

v.

L. Alvis VANDYGRIFF, Savings and
Loan Commissioner of Texas, et
al., Appellees.

No. 13455.

Court of Appeals of Texas,
Austin.

March 3, 1982.

Thomas A. Broussard, McKay & Burns, P.
C., Austin, for appellant.

Mark White, Atty. Gen., Thomas M. Pollan, Asst. Atty. Gen., Larry Temple, Austin, for appellees.

POWERS, Justice.

Community Savings and Loan Association (Community) sued in district court for

judicial review of an order of the Savings and Loan Commissioner of Texas. The order approved an application by Brazos Savings Association of Texas (Brazos) to establish a branch office in the City of Bryan, Texas. The district court affirmed the order and Community seeks further judicial review in this Court, as allowed by § 20 of Tex.Rev.Civ.Stat.Ann. art. 6252–13a, the Texas Administrative Procedure and Texas Register Act [TAPTRA].

Under the first of three points of error, Community contends the Commissioner's findings,[1] which support the order, were arbitrary and capricious or characterized by an abuse of discretion, a statutory ground for reversing the Commissioner's order set out in TAPTRA § 19(e)(6).[2] By way of elaboration, Community says that the findings were not based upon a consideration of all relevant matters shown in the evidence adduced at the agency hearing; rather, they are based upon only selected portions of such evidence and in disregard of other relevant matters established by substantial and even uncontroverted evidence. In consequence, the Commissioner's findings, it is argued, were not the result of reasoned decision-making. We find the substance of Community's argument is, however, that the Commissioner failed to give conclusive effect to that evidence which weighed against his findings and the establishment of a branch office. Community equates this failure with arbitrary and capricious action and an abuse of discretion, and does so in language which addresses only the subjective mental functioning of the Commissioner in his evaluation of the evidence—that he "ignored" or "failed to consider" that portion of the evidence which militated against his findings, and gave effect to "selected" portions of the evidence which supported them. Lacking omniscience, we are confined in this appeal to errors shown of record. *McClelland v. Moore*, 48 Tex. 355 (1877). The Commissioner's subjective mental functioning is not shown of record. We know of no way to evaluate Community's first point of error, it being so framed, except to do so under the "substantial evidence" ground for reversal set forth in TAPTRA § 19(e)(5), an objective matter verifiable from the record.[3]

---

1. The Commissioner's order embodies the findings required by Tex.Rev.Civ.Stat.Ann. art. 852a, § 2.08 [Texas Savings & Loan Act]. These findings, though made expressly applicable only to *charters* for new associations, are also required to be made in the determination of branch office applications. *Gerst v. Jefferson County Savings and Loan Assoc.*, 390 S.W.2d 318 (Tex.Civ.App.—Austin 1965, writ ref'd n. r. e.). The requisite findings applicable to the present case are:

   \* \* \* \* \* \*

   (3) there is a public need for the proposed association and the volume of business in the community in which the proposed association will conduct its business is such as to indicate profitable operation;
   (4) the operation of the proposed association will not unduly harm any existing association.

   \* \* \* \* \* \*

   Tex.Rev.Civ.Stat.Ann. art. 852a § 2.08.
   The undue harm spoken of in subsection (4) does not include a "probable slowing down of the rate of growth of an existing association because of a lessened opportunity to obtain business in a prospectively developing area," owing to increased competition occasioned by a new institution or branch office. *Gerst v. Nixon*, 411 S.W.2d 350, 359 (Tex.1966).

2. See n. 3, *infra*.

3. Since the enactment of TAPTRA, effective January 1, 1976, an agency action taken without substantial evidence to support it is no longer a case of arbitrary and capricious action, nor an abuse of discretion, for the purposes of judicial review. Rather, want of substantial evidence is a separate and independent standard for evaluating administrative action, distinct from arbitrariness, capriciousness and abuse of discretion. An explanation is required for clarity.

   TAPTRA § 19(e) sets forth six grounds for reversing an administrative agency's decision, findings, inferences or conclusions where substantial rights of the party seeking judicial review have been prejudiced, in cases where such review is other than by trial *de novo*. In such cases, reversal of the agency action is required if it is:

   (1) in violation of constitutional or statutory provisions;
   (2) in excess of the authority of the agency;
   (3) made upon unlawful procedure;
   (4) affected by other error of law;
   (5) not reasonably supported by substantial evidence in view of the reliable and probative evidence in the record as a whole; or

Nevertheless, we will comment on the reasonableness of the Commissioner's actions where relevant to our discussion.

(6) arbitrary or capricious or characterized by an abuse of discretion or clearly unwarranted exercise of discretion.

The six stated grounds are manifestly separate grounds for judicial review, evaluation, and reversal if found applicable to the case. *Starr County v. Starr Indus. Services, Inc.*, 584 S.W.2d 352 (Tex.Civ.App.—Austin 1979, writ ref'd n. r. e.).

It is equally obvious that any one ground may overlap another. For example, in *Lewis v. Metropolitan Sav. & Loan Ass'n*, 550 S.W.2d 11 (Tex.1977), the majority held that the exclusion of one exhibit in the agency hearing violated, simultaneously, subsections (1), (3) and (6) of TAPTRA § 19(e): subsection (1) because exclusion of the evidence in the particular case rose to the level of violating the party's constitutional right to procedural due process of law; subsection (1) for the additional reason that exclusion of the evidence was contrary to the statutory provisions of Texas Savings and Loan Act § 11.11(2), giving an interested party the right to present evidence and argument on all relevant issues; subsection (3) for the same reasons, the matter of evidence being a procedural matter and exclusion of the evidence being unlawful procedure; and violated subsection (6) because exclusion of the evidence was arbitrary or capricious, or an abuse of discretion, or an instance of clearly unwarranted exercise of discretion.

One must not, because of the possibility of an overlap, take the erroneous view that subsection (6) of TAPTRA, § 19(e) is *limited* to a violation of one of the preceding five subsections, though a violation of the preceding subsections will always constitute a violation of the prohibition against administrative agencies implied by subsection (6). Before the enactment of TAPTRA, it was customary to equate a want of substantial evidence with an abuse of discretion, and Community relies upon that equation in the present case. *See Gerst v. Cain*, 388 S.W.2d 168 (Tex.1965); *Board of Firemen's Relief and Retirement Fund Trustees v. Marks*, 150 Tex. 433, 242 S.W.2d 181 (1951); *Trapp v. Shell Oil Co.*, 145 Tex. 323, 198 S.W.2d 424 (1946). That is not so now.

In our view, subsection (6) of TAPTRA § 19(e) was intended as a safety net to catch agency action which prejudices a substantial right of a party to the administrative proceeding and which is unreasonable in all the circumstances, but nevertheless may not easily be categorized within any of the preceding five subsections. And an agency action *may* be unreasonable in all the circumstances, and therefore arbitrary or capricious, or an abuse of discretion or a clearly unwarranted exercise of discretion, whichever phrase is most suited to the case, and yet not fit easily into any of the preceding

We find the administrative record supports the trial court's judgment that the Commissioner's order is valid and reason-five subsections. For example, bias may infect the administrative proceeding in a case where no provable or clear-cut statutory or constitutional violation is identifiable. *See* J. Witherspoon, *The Supreme Court and Administrative Impartiality: A Testing Case for Judicial Review*, 7 Tex.Tech.L.Rev. 245 (1976). To paraphrase a hypothetical case posed by Professor Witherspoon, let us suppose an application for a license is filed with the pertinent agency and, after representing the applicant in the preparation of the application, the applicant's attorney becomes a hearing examiner for that very agency and proceeds to adjudicate the case in the agency. One opposing the award of the license in such circumstances should not have to run the risk of hidden subjective partiality, absent some exculpatory facts which can admittedly be imagined. The agency action in such a case could be viewed as unreasonable in all the circumstances even though no bias may be objectively demonstrated. *Id.* at 246–47. A pristine and all-inclusive definition of what constitutes a violation of the stricture against administrative action implied in subsection (6) is inherently impractical of statement, beyond saying that it is an action unreasonable in all the circumstances of the particular case under judicial review. *See generally* R. Berger, *Administrative Arbitrariness*, 65 Colum.L.Rev. 55 (1965). Another writer states, in a similar vein, that "the test is essentially that of the rationality of the administrative determination." 2 F. Cooper, *State Administrative Law* 764 (1965). A review of the cases decided since the passage of TAPTRA reveals only four decisions by appellate courts holding arbitrary or capricious the action of an administrative agency: *Lewis v. Metropolitan, supra; Cameron County Good Gov't League v. Ramon*, 619 S.W.2d 224 (Tex. Civ.App.—Beaumont 1981, writ filed); *Texas Alcoholic Bev. Comm'n v. Good Spirits, Inc.*, 616 S.W.2d 411 (Tex.Civ.App.—Waco 1981; no writ); and *Starr County v. Starr Indus. Services, Inc.*, 584 S.W.2d 352 (Tex.Civ.App.—Austin 1979, writ ref'd n. r. e.). *Lewis* is discussed above. In *Good Spirits*, the court held it arbitrary to refuse to grant a package store permit for an eighth store after previously granting seven permits under similar conditions. In *Starr County*, the court held it arbitrary to base a decision on a ground not authorized. *Ramon* held it arbitrary for the county to refuse to comply with a competitive-bidding statute. All four cases could, apparently, have been decided on the basis of other grounds stated in TAPTRA § 19(e), i.e. an action in violation of constitutional or statutory provisions, in excess of the agency's statutory authority, taken pursuant to unlawful procedure, or affected by other error of law.

ably supported by substantial evidence and that it is, in all respects, a valid, legal, and proper order, which should be affirmed.

■ With respect to the Commissioner's finding of a public need for the proposed branch office, Community points to contrary evidence which showed that Community's own new branch office, under construction at the time of the administrative hearing, would be surrounded by four of Brazos' full-service facilities already established in the vicinity, a matter which also bears on the Commissioner's finding relative to undue harm to existing associations; that seven commercial banks and seven savings and loan associations were to be found in the county; that two savings and loan associations had buildings under construction in the City of Bryan; that these numerous existing financial institutions competed vigorously for the savings dollars to be derived from the locality; and, that Brazos' net deposits increased from $91,534,000 on September 30, 1977, to $91,841,000 on February 29, 1980, an increase of only $307,000.

The evidence to which the Commissioner assigned the greater weight showed the location of the proposed branch office to be at "major cross-thoroughfares" in the City of Bryan; that this location was in an "area of new residential construction" and near a "concentration of medical offices"; and that the area was an area of growth "not yet fully developed." The Commissioner's order recites the evidence weighing for and against public need and reconciles the conflict by giving the greater weight to the former.

■ Continuing under its first point of error, Community complains of the Commissioner's decision to use the Bryan Independent School District as the "community" or context within which to hear, consider and determine the findings required under the Texas Savings and Loan Act § 2.08. Community argued in the proceedings for a smaller "community," and contends the un-

disputed evidence shows existing savings and loan facilities would necessarily be passed by if customers chose to patronize the branch office proposed by Brazos, two of the existing facilities being those of Brazos itself. The implication is that customers would patronize the first facility they approached. Community points to the provisions of the Commissioner's Rule 1.01, which defines "community" for hearing purposes as:

> [T]hat geographical area so situated with respect to the proposed location that persons residing in such area could patronize the proposed office in the ordinary course of their business.

We find the agency's choice of the school district not unreasonable and supported by substantial evidence, in view of the evidence adduced at the agency hearing which showed ninety-percent of the district's population living in the City of Bryan; the proposed site was on a major thoroughfare which connected the east and west ends of the district; and the site was within a few blocks of the only high school in the district. All of this evidence implied that residents of the school district *could*, and perhaps would, patronize the proposed branch office in the ordinary course of their business. Under Rule 1.01, it was necessary only to show that such customers *could* patronize the proposed branch office.

■ Community also attacks, under its first point of error, the finding of the Commissioner relative to the expected profitable operation of the proposed branch office. Included within the record of the administrative hearing is evidence that savings by Bryan residents increased consistently each year from 1974 ($34,631,416) through 1979 ($62,848,166); the savings held by Brazos showed a "healthy increase" which demonstrated that association's ability to obtain and retain an increasing amount of savings from all areas served by it, including the Bryan area; the population base of the area was growing, indeed, the Bryan standard metropolitan statistical area was one of the fastest-growing in the nation; employment in the area had increased from April, 1974,

(28,000) to November, 1979, (38,000); the economy of the area was greatly diversified; bank deposits were up; manufacturing operations were expanding; total cash deposits for agricultural activities were increasing; the value of mineral production and the amount of production were increasing; existing savings and loan associations competing in "this marketplace" were "doing well and growing"; and so forth.

Community complains that the Commissioner "ignored" such evidence as: the undisputed testimony that Community was required to borrow money from outside the school district in order to make loans within the district; testimony "concerning the loss of profits to the savings and loan industry" located in the district; testimony that Community received in 1978 only about half the "net new money" it received in 1977; and testimony that Community closed fewer loans in 1979 than it did in the three previous years. Community also states correctly that the record contains evidence of the unfavorable condition of the national economy and the unfavorable condition of savings and loan associations generally. This evidence shows that savings and loan associations generally are faced with a situation where they have, on the one hand, an increased demand for loans, and on the other hand a decrease in the amount of money flowing into the associations from which to make loans; that the associations have to pay, as interest for such funds, whether from savings or other sources, an amount which draws increased resistance from borrowers. Other evidence shows a national economy which might be described as "uncertain." Community argues that the Commissioner "ignored" or "failed to consider" this evidence in making his findings. As we mentioned above, the actual argument is the Commissioner failed to give conclusive effect to such evidence, for the record also contains substantial evidence which supports his findings.

The evidence relied upon by Community, one will observe, is generally of two kinds: the first deals with Community's own experience in the "marketplace"; the second with the general business climate and prospects of savings and loan associations. The Commissioner was charged with making a decision involving a specific "community," a specific applicant, and specific competitors. In doing so, he was necessarily required to weigh and adjust the specific situations against the general. For example, he was required to weigh that evidence which showed the experience of Community or Brazos against that of other associations in the "community," and the local economic climate against that of the nation at large. When faced with absolutely conflicting evidence, the Commissioner is required to make a choice and resolve the conflict by giving controlling effect to one or the other. Such is the essence of the quasi-judicial function assigned by statute to the Commissioner. It is not grounds for reversal that he makes a choice between conflicting evidence which may, as here, be said to be substantial on both sides of a proposition, whether in the form of direct testimony or in the form of those inferences which may reasonably be drawn from such direct evidence. We overrule Community's first point of error.

In Community's second point of error, it contends it was denied due process of law when the hearing examiner refused it an opportunity to prepare rebuttal evidence directed at new matter contained in an amended application filed by Brazos. The point was expressly waived by Community in oral argument in this Court and we therefore do not consider it.

■ Community's third and last point of error complains that the Commissioner failed to follow § 11.11(4) of the Texas Savings and Loan Act and TAPTRA § 16(b). These sections require that the Commissioner's findings, "if set forth in statutory language," be accompanied by a concise and explicit statement of the underlying facts which support those findings. Community contends that the Commissioner violated the statutory requirement by merely adopting the testimony of those witnesses who favored granting the application and who testified to matters which supported the Commissioner's findings.

Community's characterization of the Commissioner's order is unjustified with respect to both statutory provisions. The order sets forth each of the Commissioner's ultimate findings, in statutory language, followed by a contrapuntal narrative of the underlying and conflicting facts drawn from the evidence. Where the order states that a particular witness's testimony is "adopted," the obvious meaning and intention is that the Commissioner selected that point of view or the thrust of that testimony or opinion in lieu of the contrary evidence. We find the order sets forth the underlying facts in reasonable detail so as to give meaning to those ultimate findings which they follow. The underlying facts are stated clearly and explicitly and we can fairly and reasonably say they support the ultimate findings. *Gage v. Railroad Commission*, 582 S.W.2d 410 (Tex.1979); *Railroad Commission v. Graford Oil Corp.*, 557 S.W.2d 946 (Tex.1977); *Imperial American Resources Fund, Inc. v. Railroad Commission*, 557 S.W.2d 280 (Tex.1977). The conclusions of law are stated separately, one at the end of the Commissioner's order—to the effect that the application should be granted, the requisite ultimate facts having been found as required by the Texas Savings and Loan Act § 2.08—and the remainder in the beginning of the order under the heading "Preliminary Matters." The order complies in that respect with TAPTRA § 16(b). We overrule Community's last point of error.

The Commissioner's order is presumed valid and within his discretion to render. *Lewis v. Southmore Savings Association*, 480 S.W.2d 180 (Tex.1972); *Gerst v. Guardian Savings and Loan Association*, 434 S.W.2d 113 (Tex.1968). The burden rested upon Community to show invalidity of the order on the grounds which it contended warranted reversal. *United Savings Association v. Vandygriff*, 594 S.W.2d 163 (Tex.Civ.App.—Austin 1980, writ ref'd n. r. e.). Believing no such grounds are shown in this administrative record and finding substantial evidence to support the Commissioner's findings, we hold Community has not discharged its burden and affirm the judgment of the trial court.